**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
MAJOR, LINDSEY & AFRICA, LLC,    :
               :
     Plaintiff,      :
               :  10 Civ. 4239 (CM)
   - against -      :
               :  ECF Case
SHARON MAHN, CARLO PECORARI,  :
PARKER LELAND, INC., JOSHUA KAGAN, :
and KAGAN CONSULTANTS INC.,   :
               :
     Defendants.    :
-------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHARON MAHN'S MOTION TO DISMISS  AND/OR STAY PLAINTIFF'S CLAIMS

Robert J. Anello
Judith L. Mogul
Sidhardha Kamaraju
Morvillo, Abramowitz, Grand, Iason,
Anello & Bohrer, P.C.
565 Fifth Avenue, New York, NY 10017
(212) 856-9600

*Attorneys for Sharon Mahn*

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ...................................................................................... ii

Preliminary Statement .................................................................................. 1

Statement of Facts ........................................................................................ 2

Argument ...................................................................................................... 5

    I.      MLA's Claims Against Ms. Mahn
            Should Be Dismissed ................................................................. 6

          A.    MLA's Claims Against Ms. Mahn Should be
                Dismissed in Favor of Arbitration ...................................... 6

          B.    MLA's Claim to Injunctive Relief Under the CFAA
                Should be Dismissed for Failure to State a Claim ................ 10

    II.     In the Alternative, Any of MLA's Claims Against Ms. Mahn
            That Survive Her Motion to Dismiss Should be Stayed ............... 12

    III.   The Court Should Stay MLA's Claims Against the
            Other Defendants ......................................................................... 15

Conclusion .................................................................................................. 17

i

# TABLE OF AUTHORITIES

## CASES

ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24 (2d
  Cir. 2002) ............................................................................................................9

Acquaire v. Canada Dry Bottling, 906 F. Supp. 819 (E.D.N.Y. 1995) ...........................16

Anderson Consulting LLP v. Am. Mgmt. Sys., Inc., No. 95 Civ 5428, 1995 WL
  510042 (S.D.N.Y. Aug. 28, 1995)............................................................................14

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ...................................................10

Borrero v. Ruppert Hous. Co., Inc., No. 08 Civ 5869, 2009 WL 1748060
  (S.D.N.Y. June 19, 2009)........................................................................................6

Calyon v. Mizuho Sec. USA, Inc., No. 07 Civ 2241, 2007 WL 2618658
  (S.D.N.Y. Sept. 5, 2007)........................................................................................11

Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366 (S.D.N.Y. 1990) .....................14

Citrus Mktg Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220 (2d Cir. 1991) ...................15

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987) .................................12

Givenchy S.A. v. William Stuart Indus., Ltd., No. 85 Civ. 9911, 1986 WL 3358
  (S.D.N.Y. March 10, 1986).....................................................................................13

Haagen-Dazs, Inc. v. Frusen Gladje, Ltd., 493 F. Supp. 73 (S.D.N.Y. 1980).................15

Jet One Grp. v. Halcyon Jet Holdings, Inc., No. 08 Civ 3980, 2009 WL 2524864
  (E.D.N.Y. Aug. 14, 2009).......................................................................................12

McMahan Sec. Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82 (2d Cir.
  1994) ...................................................................................................................9

Midland Walwyn Capital Inc., v. Spear, Leeds & Kellog, No. 92 Civ. 2236, 1992
  WL 249914 (S.D.N.Y. Sept. 22, 1992)....................................................................15

Motorola Credit Corp. v. Uzan, 561 F.3d 123 (2d Cir. 2009) ........................................15

Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72 (2d Cir. 1998)......................................8

Orbit One Commcʼn, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, (S.D.N.Y. 2010) .......................................................................................... 8, 10, 11

Perry v. New York Law Sch., No. 03 Civ. 9221, 2004 WL 1698622 (S.D.N.Y. July 28, 2004) ....................................................................................3, 9

Roach v. Morse, 440 F.3d 53 (2d Cir. 2006) .................................................13

Rompalli v. Portnova, No. 09 Civ. 3083, 2010 WL 2034396 (S.D.N.Y. May 5, 2010) .......................................................................................................16

Rubin v. Sona Intʼl Corp., 457 F. Supp. 2d 191 (S.D.N.Y. 2006) .................................6, 7

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987) .............................8

Spencer-Franklin v. Citigroup/Citibank N.A., No. 06 Civ. 3475, 2007 WL 521295 (S.D.N.Y. Feb. 21, 2007)...........................................................6, 7

Stokely-Van Camp Inc. v. The Coca-Cola Co., 646 F. Supp. 2d 510 (S.D.N.Y.)............15

Titan Pharma. and Nutrition, Inc., v. Med. Shoppe Intʼl, Inc., No. 05 Civ. 10580, 2006 WL 626051 (S.D.N.Y. March 13, 2006)............................................7

Tough Traveler, Ltd. v. Outbound Prod., 60 F.3d 964 (2d Cir. 1995) ............................14

Transperfect Translations Intʼl v. Merrill Corp., No. 03 Civ. 10146, 2004 WL 2725032 (S.D.N.Y. Nov. 30, 2004)...........................................................14

TravelClick, Inc. v. Open Hospitality Inc., No. 04 Civ. 1224, 2004 WL 1687204 (S.D.N.Y. July 27, 2004) ............................................................. 9, 13, 16

Vander v. Epana Networks, Inc., No. 09 Civ. 4526, 2009 WL 2365236 (S.D.N.Y., Aug. 3, 2009) ...........................................................................6, 7

WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997)...........................................8

Worldwide Sports Nutritional Supplements, Inc. v. Five Star Brands, LLC, 80 F. Supp. 2d 25 (N.D.N.Y. 1999)....................................................................14

**STATUTES**

9 U.S.C. § 3..................................................................................................6, 9

18 U.S.C. § 1030 .......................................................................................4, 10

18 U.S.C. § 1962 ............................................................................................................4

Fed. R. Civ. P. 12 ................................................................................................. 1, 6, 10

Defendant Sharon Mahn, through her undersigned attorneys, submits this memorandum of law in support of her motion to (i) dismiss in favor of arbitration the claims asserted against her by plaintiff Major, Lindsey & Africa, LLC ("MLA" or the "company"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 3 of the Federal Arbitration Act, or, in the alternative, to compel arbitration of the majority of the claims against Ms. Mahn and stay the remainder, and (ii) to stay pending arbitration the remainder of MLA's claims against Ms. Mahn's co-defendants.

## PRELIMINARY STATEMENT

In this lawsuit (filed under seal), MLA has sued Ms. Mahn and her co-defendants, based on their alleged use of MLA's supposed proprietary and confidential information, acquired by Ms. Mahn when she worked for MLA as a legal recruiter.  MLA's suit in federal court is an improper attempt to circumvent its mandatory arbitration agreement with Ms. Mahn, which specifically prohibits MLA from even commencing a lawsuit based on the claims made against Ms. Mahn.  MLA tacks on to its complaint a meritless claim for injunctive relief under the Computer Fraud and Abuse Act (the "CFAA") in a thinly veiled effort to avoid this arbitration obligation.  This claim must be arbitrated.  Moreover, it fails as a matter of law.  Thus, all of MLA's claims against Ms. Mahn must be dismissed and MLA should be compelled to arbitrate them.

Should any claims asserted against Ms. Mahn survive her motion to dismiss, they, along with the claims against the other defendants, should be stayed.  Any claim that proceeds before this Court would be duplicative of the claims that must be arbitrated.  Thus, a stay will conserve judicial resources and avoid duplicative adjudication of the issues.  Moreover, MLA's claims to equitable relief are of questionable merit.  Having delayed initiating this action for more than six months after it discovered Ms. Mahn's purported misappropriation of its proprietary and

confidential information, and having failed to move for injunctive relief in the nearly two months

since filing its complaint, MLA has no legitimate basis for asserting any risk of irreparable harm,

and thus no basis for obtaining injunctive relief.  Moreover, MLA's hands are unclean; the

company has participated in the same type of practices with which it charges Ms. Mahn.

Ms. Mahn accordingly seeks to dismiss MLA's complaint against Ms. Mahn because all

of its claims against Ms. Mahn must be arbitrated and the lone claim for injunctive relief fails as

a matter of law.  In the alternative, Ms. Mahn requests that MLA be compelled to arbitrate all of

its monetary claims and that any claim for injunctive relief against her be stayed.  Finally, Ms.

Mahn moves to stay MLA's claims against the other defendants pending completion of the

arbitration.

## STATEMENT OF FACTS

I.     <u>The Arbitration Agreement</u>

Ms. Mahn was employed as a Managing Director in MLA's Partner Practice Group.

(Compl. ¶ 16).  When she joined MLA, Ms. Mahn and the company entered into an employment

agreement, dated October 19, 2005 (the "Employment Agreement").  (<u>Id.</u>, ¶ 17; Compl. Ex. 1).

The Employment Agreement contains provisions limiting the use and disclosure of information

contractually defined to be confidential.  (Compl. Ex. 1, at p. 2-3).  The Employment Agreement

also contains an arbitration clause that provides "[a]s a condition of employment, all employees

must sign the attached Mutual Agreement to Arbitrate Claims (Arbitration Agreement).  If you

have not previously signed the Arbitration Agreement, its terms are expressly incorporated into

these Terms and Conditions."  (<u>Id.</u> at p. 4).

The incorporated "Mutual Agreement to Arbitrate Claims" (the "Arbitration

Agreementö)[1] specifically states that:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies (õclaimsö), past, present, or future, whether or not arising out of my employment (or termination), that the Company may have against me or that I may have against the Company or against its officers, directors, Members, employees, or agents in their capacity as suchí .The claims covered by this Agreement include but are not limited toí  claims for breach of any contract or covenant (express or implied), tort claims,í  and claims for violation of any federal, state, or government law, statute, regulation, or ordinance, except claims excluded elsewhere in this Agreement.

(Mogul Decl., Ex.  A, at p. 1).  This broad, mandatory Arbitration Agreement also provides that neither party õshall initiate or prosecute any lawsuit or administrative action í  in any way related to any claim covered by this Agreement.ö  (Id. at p. 1).  Under the agreement, arbitration is final and binding on all parties.  (Id. at p. 3-4).

The  Arbitration  Agreement  does  contain  a  narrow  carve-out  for, *inter alia*, claims seeking injunctive or declaratory relief, but only õwith respect to any confidentiality, return of property, non-solicitation, non-compete, or non-disparagement covenants that I have with the Company  or  any  other  intellectual  property  rights.ö (Id.  at  p. 2).   However,  the  agreement provides that õall other aspects of such claims, including any claims for damages, are covered by this Agreement.ö  (Id.).

The Arbitration Agreement provides that any arbitration will be conducted by either the American Arbitration Association (the õAAAö) or Judicial Arbitration & Mediation Services (õJAMSö).  (Id., at p. 3).  The party who does not initiate the arbitration is permitted to designate which organization shall conduct the arbitration.  (Id.)

---

[1] Although MLA did not attach the Arbitration Agreement to its complaint (perhaps because the agreement clearly bars prosecution of MLAøs claims before this Court), the Court can properly consider the terms of the Arbitration Agreement because the agreement is integral to MLAøs complaint.  Perry v. New York Law Sch., No. 03 Civ. 9221, 2004 WL 1698622, at *2, n.3 (S.D.N.Y. July 28, 2004) (holding that arbitration agreement could properly be considered on a

II.    <u>MLA Initiates its Improper Lawsuit</u>

MLA terminated Ms. Mahn on or about November 18, 2009, after, it claims, discovering

e-mails in which Ms. Mahn supposedly had disclosed MLA's proprietary information to one of

her co-defendants in this case.  (Compl. ¶¶ 44-45).  More than six months later, on May 26,

2010, MLA filed its complaint against Ms. Mahn, Carlo Pecorari, Joshua Kagan, Parker Leland,

Inc. ("Parker Leland"), and Kagan Consultants Inc. ("Kagan Consultants").  In its complaint,

MLA contends, in sum and substance, that the defendants improperly benefited from MLA's

purportedly confidential information allegedly obtained by Ms. Mahn during the course of her

employment.

MLA brings nine causes of action against Ms. Mahn.  The causes of action alleged

against Ms. Mahn are (i) violation of the Computer Fraud and Abuse Act (the "CFAA"), 18

U.S.C. § 1030 (the "CFAA claim"); (ii) breach of contract (the "contract claim"); (iii) equitable

accounting (the "accounting claim"); (iv) breach of fiduciary duty (the "fiduciary duty claim");

(v) breach of duty of loyalty (the "loyalty claim"); (vi) misappropriation of confidential

information and trade secrets (the "misappropriation claim"); (vii) unfair competition (the

"competition claim"); (viii) civil RICO violations, under 18 U.S.C. § 1962(c) (the "substantive

civil RICO claim"); and (ix) civil RICO conspiracy, under 18 U.S.C. § 1962(d) (the "civil RICO

conspiracy claim").  (<u>Id.</u> ¶¶ 53-73; 82-95; 98-114).

MLA purports to seek injunctive relief against Ms. Mahn only under its CFAA claim and

even in that claim, it seeks monetary relief as well.  (<u>Id.</u>, ¶ 59).  MLA does not assert its

entitlement to injunctive relief under any other claim against Ms. Mahn.  Under the accounting

claim, the company contends that the defendants must provide an accounting of all revenues they

motion to dismiss because it was "integral" to the complaint and the defendant's motion to
compel arbitration, even though arbitration agreement was not attached to the complaint).

allegedly received improperly.  (Id., ¶ 68).  MLA merely repeats the boilerplate that its has

suffered "irreparable harm and damages" in the contract claim, the fiduciary duty claim, the

loyalty claim, the misappropriation claim, and the competition claim.  (Id., ¶¶ 64, 73, 85, 91, 95).

In both RICO claims, MLA alleges that it has been "injured in its business and property," but

does not indicate what form of relief it seeks for this purported injury.  (Id., ¶¶ 98-114).  Thus,

under eight of its causes of action against Ms. Mahn, MLA seeks exclusively monetary relief

(collectively the "monetary claims"); in its CFAA claim MLA seeks both monetary and

injunctive relief.

   Ignoring the Arbitration Agreement's designated procedures for initiating a claim against

Ms. Mahn, MLA filed its improper complaint with this Court without notifying Ms. Mahn in

advance of its claim, which would have triggered Ms. Mahn's right, under the Arbitration

Agreement, to designate the forum for arbitration.  Instead, in footnotes to a sentence describing

its CFAA claim and to its prayer for relief, MLA offers to "submit its claims against [Ms. Mahn]

for monetary relief" to arbitration once Ms. Mahn designates a sponsoring organization.  (Id. p.

2, n.1; p. 30, n.2).  Treating the complaint as a notice of claim by MLA,  on July 1, 2010, Ms.

Mahn designated AAA as the organization to arbitrate her disputes with MLA. (Mogul Decl. Ex.

B).  On July 12, 2010, MLA again acknowledged that it would submit "the arbitrable claims

against" Ms. Mahn to the AAA, but has yet to withdraw any claims from before this Court.  (Id.,

¶ 4).

## ARGUMENT

   The relief Ms. Mahn seeks through this motion is three-fold.  First, she moves to dismiss

MLA's complaint as against her because none of those claims are properly before this Court.  All

of MLA's claims against Ms. Mahn are subject to an arbitration agreement.  Furthermore,

MLA's lone claim for injunctive relief (a claim asserted purely to circumvent that agreement)

fails because MLA does not allege facts supporting an essential element of a claim under the

CFAA – that Ms. Mahn's use of MLA's computers was unauthorized.  In the alternative, any

claim for injunctive relief that survives Ms. Mahn's motion to dismiss should be stayed pending

resolution of the arbitration.  A stay would be warranted because any nonarbitrable issues would

be (i) duplicative of the issues that must be submitted to arbitration and (ii) of questionable merit.

Finally, Ms. Mahn moves to stay MLA's claims against the other defendants pending resolution

of the arbitration, because the claims against those defendants are nearly identical to or entirely

dependent on the claims that will be arbitrated against Ms. Mahn.  A stay thus would conserve

judicial resources and avoid duplicative consideration and inconsistent resolution of the same

issues.

I.      <u>MLA's Claims Against Ms. Mahn Should Be Dismissed</u>

        A.    *MLA's Claims Against Ms. Mahn Should be Dismissed in Favor of Arbitration*

Ms. Mahn moves to dismiss MLA's claims against her in favor of arbitration pursuant to

Fed. R. Civ. P. 12(b)(6), and to compel arbitration of these claims pursuant to § 3 of the Federal

Arbitration Act.  <u>See, e.g.</u>, <u>Vander v. Epana Networks, Inc.</u>, No. 09 Civ. 4526, 2009 WL

2365236, at *1 (S.D.N.Y., Aug. 3, 2009); <u>Borrero v. Ruppert Hous. Co., Inc.</u>, No. 08 Civ. 5869,

2009 WL 1748060, at *1 (S.D.N.Y. June 19, 2009); <u>Spencer-Franklin v. Citigroup/Citibank</u>

<u>N.A.</u>, No. 06 Civ. 3475, 2007 WL 521295, at *1 (S.D.N.Y. Feb. 21, 2007); <u>Rubin v. Sona Int'l</u>

<u>Corp.</u>, 457 F. Supp. 2d 191, 193 (S.D.N.Y. 2006).

Whether raised on a motion to dismiss in favor of arbitration or a motion to compel

arbitration, the arbitrability of a particular dispute turns on four elements: (i) whether a valid

agreement to arbitrate exists; (ii) whether the scope of the arbitration agreement reaches the

particular dispute; (iii) if federal statutory claims are asserted, whether Congress intended those

claims to be arbitrable; and (iv) if some, but not all of the claims in the case are arbitrable, then whether a stay of the balance of the proceedings is appropriate. See Vander, 2009 WL 2365236, at *2 (internal citation omitted); Spencer-Franklin, 2007 WL 521295, at *2 (internal citation omitted). Where the claims asserted can be disposed of in arbitration, the Court may, in its discretion, dismiss, rather than stay, the action. See Rubin, 457 F. Supp. 2d at 198; Titan Pharma. and Nutrition, Inc., v. Med. Shoppe Int'l, Inc., No. 05 Civ. 10580, 2006 WL 626051, at *6 (S.D.N.Y. March 13, 2006). Under this standard, MLA's claims against Ms. Mahn should be dismissed in favor of arbitration.

MLA's claims against Ms. Mahn meet all four of the factors requiring arbitration. MLA acknowledges that it entered into a valid arbitration agreement with Ms. Mahn. (Complaint. p. 2, n. 1; p. 30 n.2). The Arbitration Agreement applies to "all claims or controversies... past, present, or future, whether or not arising out of [Ms. Mahn's] employment (or its termination), that the Company may have against [Ms. Mahn]." (Mogul Decl. Ex. A, p. 1). Examples of claims covered by the agreement include "claims for any breach of contract or covenant (express or implied)"; "tort claims"; and "claims for violation of any federal, state, or other government law, statute, regulation, or ordinance... ." (Id.) These are precisely the types of claims MLA asserts against Ms. Mahn in this lawsuit. Indeed, MLA has conceded both the validity and the applicability of the Arbitration Agreement to its claims by stating that it would "submit its claims against Mahn for monetary relief when she designates, pursuant to her arbitration agreement, a suitable sponsoring organization." (Compl. p. 2, n.1; p. 30, n.2).

The fact that MLA also seeks injunctive relief under the CFAA does not remove that claim from the scope of the arbitration clause or render that claim appropriate for adjudication in this Court. The broad language of the Arbitration Agreement gives rise to a presumption that

any claim between MLA and Ms. Mahn must be arbitrated.  See Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998).  MLA can only rebut this presumption if it can "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 74 (2d Cir. 1997).  MLA cannot meet this high hurdle for its CFAA claim.

By contrast to the broad arbitration clause, the carve-out for non-arbitrable claims seeking injunctive relief is narrow.  It permits legal action only for claims "seeking injunctive relief or declaratory relief with respect to any confidentiality, return of property, non-solicitation, non-compete, or non-disparagement covenants that [Ms. Mahn has] with the Company or any other intellectual property rights."  (Mogul Decl. Ex. A, at p. 2).  MLA's CFAA claim does not seek this narrow band of relief related to MLA's intellectual property or confidential information.  The gravamen of a CFAA claim is alleged improper *access* to a protected computer, not alleged improper *use* of proprietary information.  Orbit One Commc'n, Inc. v. Numerex Corp., 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010).  Far from affording any "positive assurance" that a claim for injunctive relief under the CFAA is not arbitrable, the language of the carve-out makes clear that a claim such as MLA's CFAA claim is fully arbitrable.[2]  All of MLA's claims against Ms. Mahn, regardless of the relief they seek, are thus governed by the Arbitration Agreement

MLA's claims also meet the third arbitrability factor because its statutory claims are amenable to arbitration.  MLA brings claims under two federal statutes, the CFAA and the civil RICO statute.  Claims under both statutes are properly arbitrable.  See Shearson/American

---

[2] Furthermore, because "there is a strong federal policy favoring arbitration," any "doubts as to whether [the CFAA claim to injunctive relief] falls within the scope of [the Arbitration

Express, Inc. v. McMahon, 482 U.S. 220, 241-242 (1987) (civil RICO claims may be arbitrated); TravelClick, Inc. v. Open Hospitality Inc., No. 04 Civ. 1224, 2004 WL 1687204, at *5 n.4 (S.D.N.Y. July 27, 2004) ("Congress did not intend for claims arising under the Computer Fraud and Abuse Act and the Lanham Act to be nonarbitrable."). Thus MLA's statutory claims against Ms. Mahn can, and should be, arbitrated.

Finally, dismissal of MLA's claims against Ms. Mahn, rather than a stay of those claims, is warranted under the fourth factor. All of MLA's nine causes of action against Ms. Mahn are subject to arbitration. Moreover, under the terms of the Arbitration Agreement, MLA never was entitled to bring these claims before this Court in the first place. (Mogul Decl. Ex. A, p. 1). In other words, these claims are not properly before this Court and once they have been submitted to arbitration, the Court's role with respect to them would be limited only to potentially confirming an arbitration award. Thus, because no useful purpose would be served by staying claims not properly before this Court, dismissal is appropriate.[3] See Perry, 2004 WL 1698622, at *4-5 (dismissing in favor of arbitration claims against one of multiple defendants where all of the claims against that defendant were arbitrable). Accordingly, Ms. Mahn respectfully requests that MLA's claims against her be dismissed and MLA be compelled to arbitrate those claims against her.

---

Agreement] should be resolved in favor of arbitrability." ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 2002).

[3] In the event the Court does not to dismiss MLA's claims against Ms. Mahn, Ms. Mahn respectfully requests that MLA be compelled to arbitrate MLA's claims against Ms. Mahn to the extent the claims seek monetary relief and that this action be stayed in its entirety. The arbitrability of MLA's claims against Ms. Mahn to the extent they seek monetary relief is beyond dispute. Thus, pursuant to § 3 of the Federal Arbitration Act, the Court must stay MLA's monetary claims. See 9 U.S.C. § 3; see also McMahan Sec. Co. L.P. v. Forum Capital Markets L.P., 35 F.3d 82, 85-86 (2d Cir. 1994) (stating that a district court must stay the proceedings with respect to issues referred to arbitration).

B.    *MLA's Claim to Injunctive Relief Under the CFAA Should Be Dismissed for Failure to State a Claim*

Even if MLA's claim for injunctive relief under the CFAA is not arbitrable, Ms. Mahn, in the alternative, moves to dismiss that claim for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6). A basic element of a CFAA claim is that the defendant accessed a protected computer without authority or in excess of her authority. Orbit One, 692 F.Supp.2d at 384. MLA fails to allege any facts that even suggest that Ms. Mahn lacked the requisite authority to access MLA's computer systems. Instead, the company concedes that, based on her employment duties, *Ms. Mahn was allowed full access* to the information allegedly misappropriated. (Compl. ¶ 16). As a result, MLA's claim to injunctive relief under the CFAA— which is nothing more than an attempt to dodge MLA's obligations under the Arbitration Agreement— should be dismissed.

The CFAA bars the "intentiona[l] acces[s] [of] a computer without authorization or exceed[ing] authorized access, [to] obtai[n] information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). "The CFAA expressly prohibits improper access of computer information. It does not prohibit misuse or misappropriation." Orbit One, 692 F. Supp. 2d at 385. Thus, the relevant question is not the use of the information obtained from a protected computer, but only whether the defendant had the authority to access the protected computer and the information therein.

MLA states conclusorily that Ms. Mahn "accessed MLA's protected computer without authorization and/or exceeded her authorized access," but it pleads no facts which support that wholly conclusory assertion. (Compl. ¶¶ 55-56). Such a "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Not only does the complaint fail to allege facts suggesting any unauthorized access by Ms.

Mahn, but MLA affirmatively establishes under the facts alleged that she was authorized to access both MLA's computer and the information it alleges she misappropriated.

What the company does allege undercuts, rather than bolsters, its CFAA claim. The company alleges that its purportedly confidential information is housed in a password-protected database, (Compl. ¶ 14), and then expressly concedes two paragraphs later, that Ms. Mahn had "regular and full access to MLA's highly valuable Confidential Information and Trade Secrets." (Id., ¶ 16). This is hardly surprising, because, as MLA itself alleges, Ms. Mahn used this information in "the process of developing and maintaining *MLA's relationships* with various clients and candidates," or, in other words, while doing her job. (Id. (emphasis added)). Nowhere in its complaint does MLA plead any fact showing that Ms. Mahn was not entitled to access any of the information she is alleged to have misappropriated. Beyond its conclusory statements, in fact, MLA does not even allege that Ms. Mahn accessed MLA's protected database. Rather, MLA's entire CFAA claim, like all of its other claims, is necessarily based on Ms. Mahn's purported misappropriation of information she had the authority to access.

Liability under CFAA has been rejected in nearly identical situations. In Orbit One, an employer brought a CFAA action against former employees, alleging that they "-intentionally accessed [the employer's] computer system and downloaded confidential and proprietary information contained on that system, and removed that information...for the purpose of competing with [the employer]." 692 F. Supp. 2d at 384. After extensive analysis of the CFAA's language, the court dismissed the claim because, even assuming that the former employees had misappropriated the employer's proprietary information, they "concededly were granted unfettered access to [the employer's] computer systems and the information residing on it." Id. at 386. But see Calyon v. Mizuho Sec. USA, Inc., No. 07 Civ. 2241, 2007 WL 2618658,

at *1 (S.D.N.Y. Sept. 5, 2007) (holding that the CFAA could reach a claim that an employee accessed documents on a computer system "which that employee had to know was in contravention of the wishes and interests of his employer")

Similarly, in <u>Jet One Group v. Halcyon Jet Holdings, Incorporated</u>, the plaintiff sought "to assert a CFAA claim based on [the defendant's] *misusing* and *misappropriating* information that he was freely given access to." No. 08 Civ. 3980, 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009) (emphasis in original).  Again, after careful consideration of the statute's language and purpose, the court found that, under its plain terms, the CFAA "prohibits improper 'access,' not 'misuse' or 'misappropriation.'"  <u>Id.</u>  Because the plaintiff had alleged that the defendant was permitted access to plaintiff's computer systems rather than that the defendant had exceeded its authority, the court granted the defendant's motion to dismiss the claim.  <u>Id.</u> at *5-6.

MLA does not and cannot allege that Ms. Mahn accessed its database improperly to obtain proprietary information because, as one of MLA's legal recruiters, any such access by Ms. Mahn would have been permitted as part of her employment.  (Compl. ¶ 16).  Thus the only claim under which MLA seeks injunctive relief fails as a matter of law.

II.     <u>In the Alternative, Any of MLA's Claims Against Ms. Mahn That Survive Her Motion to Dismiss Should Be Stayed</u>

To the extent the Court determines that MLA has asserted a viable claim for injunctive relief against Ms. Mahn, any such claim should be stayed pending completion of the arbitration. When some but not all claims asserted in a complaint have been determined to be arbitrable, the Court should consider whether to stay the balance of the proceedings; this decision lies in the discretion of the Court.  <u>See</u> <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 856 (2d Cir. 1987)

A stay is "particularly appropriate if the arbitrable claims predominate the lawsuit and the

nonarbitrable claims are of questionable merit.ö Id.  Here, any injunctive claims against Ms.

Mahn that survive her motion to dismiss are subsumed within the claims that will be arbitrated.

Thus, the arbitrator will determine whether MLA has pled and can prove facts establishing, for

example, that Ms. Mahn breached her contract or fiduciary duties, violated the CFAA,

committed civil RICO, and the amount of revenues Ms. Mahn purportedly received from her

allegedly improper behavior.  If the injunctive claims are permitted to proceed against Ms. Mahn

before the arbitration is completed, the Court would be called upon to decide these same

questions.  See, generally, Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) (holding that a party

seeking a permanent injunction must, *inter alia*, succeed on the merits of the claim and

demonstrate irreparable harm); see also, Givenchy S.A. v. William Stuart Indus., Ltd., No, 85

Civ. 9911, 1986 WL 3358, at \*4-5 (S.D.N.Y. March 10, 1986) (granting stay where non-

arbitrable claims for injunctive relief were õlogically dependentö upon the arbitrable claims).

Moreover, MLAøs claims for injunctive relief are too tenuous to proceed ahead of any

arbitral award because MLA will not be able to demonstrate irreparable harm and it does not

come before this Court with clean hands.

MLA waited more than six months to take any legal action against Ms. Mahn after it

learned of Ms. Mahnøs alleged misuse of the information it claims is confidential and

proprietary.  Despite the bare mention of injunctive relief in its complaintô filed nearly two

months agoô MLA has taken no steps to seek injunctive relief from this Court.  See TravelClick,

2004 WL 1687204, a \*5 (noting that a õpassing reference to a demand for a preliminary

injunction does not convert a standard complaint into a proceeding seekingö a preliminary

injunction).  This fact alone is fatal to MLAøs claim for injunctive relief.  Id.  (despite the use of

a õstandardizedö request for a preliminary injunction, õthe plaintiff has taken no steps to seek

such relief since filing the complaint (and, given the passage of time, would unlikely be able to establish the need for such relief)ö); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990) (denial of temporary restraining order õcannot possibly harm the plaintiffs any more than whatever injury they perceived when they filed their complaint without seeking immediate remedial reliefö).

Delay, without more, can õpreclude the granting of preliminary injunctive reliefí because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.ö Tough Traveler, Ltd. v. Outbound Prod., 60 F.3d 964, 968 (2d Cir. 1995) (internal citation and quotation omitted); see also, Anderson Consulting LLP v. Am. Mgmt. Sys., Inc., No. 95 Civ. 5428, 1995 WL 510042, at *4 (S.D.N.Y. Aug. 28, 1995) (delay in seeking preliminary injunction to prevent disclosure of trade secrets precluded finding of irreparable harm).  Here, MLA, despite its boilerplate assertions of õirreparable harm,ö has let nearly eight months pass since learning of the alleged misappropriation of its protected information, and still has not sought a preliminary injunction.  By its own admission, MLA had evidence of the purported wrongdoing in or around November 2009, when it terminated Ms. Mahn.  (Compl. ¶¶ 44-45). Still, the company did not file its complaint until more than six months later, on May 26, and even now, after nearly eight months, MLA has still not moved for injunctive relief.  Having slept on its purported rights for so long, MLA cannot show irreparable harm and its delay alone would be sufficient to defeat a motion for any preliminary injunction (should MLA ever file one).  See Worldwide Sports Nutritional Supplements, Inc. v. Five Star Brands, LLC, 80 F. Supp. 2d 25, 34-35 (N.D.N.Y. 1999) (a seven-month delay in moving for preliminary injunction to protect trade secrets precluded granting injunctive relief); see also, Transperfect Translations Intíl v.

14

Merrill Corp., No. 03 Civ. 10146, 2004 WL 2725032, at *4 (S.D.N.Y. Nov. 30, 2004) ("Courts typically decline to grant preliminary injunctions in the face of unexplained delay of unexplained delays of more than two months." (internal quotation and citation omitted))

Finally, MLA's entitlement to injunctive relief will be undermined by its own unclean hands. "[T]he doors of a court of equity [are closed] to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . ." Motorola Credit Corp. v. Uzan, 561 F.3d 123, 129 (2d Cir. 2009) (internal citation and quotation omitted). MLA cannot seek equitable relief because it has engaged in the same types of practices with which it now charges Ms. Mahn. See Haagen-Dazs, Inc. v. Frusen Gladje, Ltd., 493 F. Supp. 73, 75-76 (S.D.N.Y. 1980) (denying request for injunctive relief where plaintiff accused others of the "same deceptive practices" in which the plaintiff itself had engaged); see also Stokely-Van Camp Inc., v. The Coca-Cola Co., 646 F. Supp. 2d 510, 533-534 (S.D.N.Y. 2009) (denying request for preliminary injunction where plaintiff engaged ).

Any claim for injunctive relief against Ms. Mahn is thus of "questionable merit," and should be stayed on that basis alone.

### III. The Court Should Stay MLA's Claims Against the Other Defendants

The Court also has the authority to stay MLA's claims against Ms. Mahn's co-defendants. Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S, 943 F.2d 220, 225 (2d Cir. 1991) (reaffirming that a district court has the inherent authority to stay an action pending arbitration even as to claims against non-signatories of an arbitration agreement). "[C]ourts in this district have consistently granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources." Midland Walwyn Capital Inc., v. Spear, Leeds & Kellog, No. 92 Civ. 2236, 1992 WL 249914, at

*2 (S.D.N.Y. Sept. 22, 1992) (collecting cases).  Such a stay is particularly appropriate where, as here, the claims against the non-signatory defendants are substantially similar to those claims that must be submitted to arbitration, see Rompalli v. Portnova, No. 09 Civ. 3083, 2010 WL 2034396, at *7 (S.D.N.Y. May 5, 2010), or where the claims are tied to the same underlying facts as those to be arbitrated against the signatory defendant, see TravelClick, 2004 WL 1687204, at *6.

All of these factors are presented by MLA's claim against Ms. Mahn's co-defendants. Those claims are the same, or closely related to their arbitrable claims against Ms. Mahn.  The company alleges its accounting claim and competition claims against all co-defendants.  (Compl. ¶¶ 65-68; 92-95).  Moreover, MLA alleges both civil RICO claims against defendants Pecorari and Kagan.  (Id., ¶¶ 98-114).   As these claims are identical to those which will be arbitrated against Ms. Mahn, they should be stayed.  Finally, MLA alleges aiding and abetting breach of fiduciary duty and unjust enrichment against all of Ms. Mahn's co-defendants and tortious interference against Pecorari and Parker Leland.  (Id. ¶¶ 74-81; 96-97; 115-120).  These claims are necessarily dependent on the breach of contract and breach of fiduciary duty claims that will be arbitrated against Ms. Mahn and allowing the arbitration of the claims against Ms. Mahn to be completed will shed "significant insight" on the issues to be tried against the remaining defendants.  See Acquaire v. Canada Dry Bottling, 906 F. Supp. 819, 838 (E.D.N.Y. 1995) (where the claims to be decided in arbitration will "partially determine" or shed "significant insight" on the claims against the non-signatory defendants, a stay of the claims against the non-signatories is warranted).

Staying the claims against the other defendants in this action will conserve judicial resources and avoid duplicative and potentially inconsistent adjudication.  Thus, Ms. Mahn

respectfully submits that the Court should exercise its discretion and stay MLA's claims against the other defendants in this action.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Mahn's motion to (i) dismiss MLA's claims against her or, in the alternative, stay any surviving claim for injunctive relief and (ii) to stay MLA's claims against the other defendants should be granted.

New York, New York
July 13, 2010

Respectfully Submitted,
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.


By: <u>/s Judith L. Mogul</u>
    Robert J. Anello
    Judith L. Mogul
    Sidhardha Kamaraju
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

*Attorneys for Sharon Mahn*