UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAJOR, LINDSEY & AFRICA, LLC,

                Plaintiff,

         -against-

SHARON MAHN, CARLO PECORARI, PARKER
LELAND, INC., JOSHUA KAGAN, and KAGAN
CONSULTANTS INC.,

                Defendants.

10 Civ. 4239 (CM) (HBP)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
MAHN'S MOTION TO DISMISS AND/OR STAY AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR EXPEDITED DISCOVERY**

---

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
Telephone:  (212) 583-9600
Facsimile:  (212) 832-2719

*Attorneys for Plaintiff*

*Of Counsel:*
  Paul J. Kennedy
  David S. Warner
  Elias J. Kahn

## TABLE OF CONTENTS

**PAGE**

I. PRELIMINARY STATEMENT ........................................................................... 1

II. STATEMENT OF FACTS ................................................................................ 2

    A. Mahn Concealed Her Misconduct From MLA ..................................... 2

    B. MLA Commenced An Investigation After Discovering
        The Tip Of The Iceberg ....................................................................... 3

    C. MLA Filed This Complaint To Obtain Relief That Is
        Outside The Scope Of Mahn's Arbitration Agreement ......................... 4

    D. The Parties Engaged In Settlement Discussions After
        MLA Served The Complaint ................................................................. 4

    E. Defendants Have Ignored MLA's Request For Expedited Discovery ......... 5

III. ARGUMENT ................................................................................................ 5

    A. The Court Should Sustain MLA's Claims Against Mahn For Injunctive
        Relief Because They Are Excluded From Her Arbitration Agreement ......... 5

        1. MLA Seeks Injunctive Relief On All Claims For
            Which That Relief Is Available, Not Just Its CFAA Claim ..................... 5

        2. MLA's Claim For Preliminary Injunctive Relief Under The CFAA
            Is Properly Before The Court Because It Relates To Mahn's
            Restrictive Covenants And MLA's Intellectual Property Rights ............. 6

    B. The Court Should Sustain MLA's Claim Under The CFAA Because
        Mahn Accessed MLA's Computer Database Beyond Her Authorization ......... 7

    C. The Court Should Allow MLA To Proceed With Its Non-Arbitrable
        Claims Because A Preliminary Injunction May Be Issued Before
        Final Adjudication ............................................................................. 10

        1. MLA's Good Faith Efforts In Investigating Mahn's Misconduct
            Should Not Prevent It From Obtaining A Preliminary Injunction ......... 11

        2. MLA's Efforts To Settle With Mahn And The Other Defendants
            Should Not Prevent It From Obtaining A Preliminary Injunction ......... 12

## TABLE OF CONTENTS
### (CONTINUED)

PAGE

3.    The Court Should Allow MLA To Proceed Against The Other Defendants, With Whom It Has No Arbitration Agreement .................. 13

      a.    Staying MLA's Claims Against The Other Defendants Would Unduly Delay Preliminary Injunctive Relief Against Them .......................................................................... 13

D.    The Court Should Order Expedited Discovery Against Defendants So MLA May Promptly Ascertain The Full Breadth Of Their Misconduct And Avoid Any Further Irreparable Injury ....................................... 15

1.    MLA Has Suffered And Will Continue To Suffer Irreparable Injury ........................................................................................ 15

2.    MLA Is Likely To Succeed On the Merits Of Its Claims ...................... 16

      a.    MLA Will Prevail On Its CFAA Claim Against Mahn .............. 16

      b.    MLA Will Prevail On Its Contract Claim Against Mahn ........... 17

      c.    MLA Will Prevail On Its Breach Of Fiduciary Duty  And Breach Of Duty Of Loyalty Claims Against Mahn .................... 17

      d.    MLA Will Prevail On Its Misappropriation Claim Against Mahn ...................................................................................... 18

      e.    MLA Will Prevail On Its Unfair Competition Claim Against All Defendants ............................................................ 22

      f.    MLA Will Prevail On Its Unjust Enrichment Claim Against The Other Defendants ................................................... 22

      g.    MLA Will Prevail On Its Tortious Interference Claims Against Defendants Pecorari And Parker Leland ...................... 22

3.    The Expedited Discovery Sought is Designed To Avoid Further Irreparable Harm And Will Not Injure The Defendants ........................ 23

IV.    CONCLUSION ................................................................................. 24

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*ABKCO Music Inc. v. Harrisongs Music, Ltd.*,
    722 F.2d 988 (2d Cir. 1983) ................................................................. 18

*Acquaire v. Canada Dry Bottling*,
    906 F. Supp. 819 (E.D.N.Y. 1995) ...................................................... 14

*Albrechta v. Broome Cty. Indus. Dev. Agency*,
    274 A.D.2d 651 (3d Dep't 2000) .......................................................... 14

*Anderson Consulting LLP v. Am. Mgmt. Sys., Inc.*,
    1995 U.S. Dist. LEXIS 12417 (S.D.N.Y. Aug. 28, 1995) ................... 12

*Ashland Mgmt. Inc. v. Janien*,
    82 N.Y.2d 395, 604 N.Y.S.2d 912 (N.Y. 1993) ................................. 19

*Bartz v. Carter*,
    709 F. Supp. 827 (N.D. Ill. 1989) ......................................................... 6

*Byrne v. Barrett*,
    268 N.Y. 199 (1935) ........................................................................... 18

*Calyon v. Mizuho Sec. USA, Inc.*,
    2007 U.S. Dist. LEXIS 66051 (S.D.N.Y. Sept. 5, 2007) ............ *passim*

*Citibank, N.A. v. City Trust*,
    756 F.2d 273 (2d Cir. 1985) ................................................................ 11

*Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*,
    943 F.2d 220 (2d Cir. 1991) ................................................................ 13

*Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*,
    759 F.2d 1053 (2d Cir.), *cert. denied*, 474 U.S. 844 (1985) ............... 21

*Delphine Software Int'l, S.A.R.L. v. Electronic Arts, Inc.*,
    1999 WL 627412 (S.D.N.Y. Aug. 18, 1999) ...................................... 15

*Design Strategies, Inc. v. Davis*,
    384 F. Supp. 2d 649 (S.D.N.Y. 2005) ................................................. 18

*Doubleclick, Inc. v. Henderson*,
    1997 N.Y. Misc. LEXIS 577 (Sup. Ct. N.Y. Cty., Nov. 5, 1997) ....... 18

*EF Cultural Travel BV v. Explorica, Inc.*,
    274 F.3d 577 (1st Cir. 2001) ................................................................. 8

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ................................................................ 16

*Finley v. Giacobbe*,
    79 F.3d 1285 (2d Cir. 1996) ................................................................ 23

*FMC Corp. v. Taiwan Tainan Giant Indus. Co.*,
    730 F.2d 61 (2d Cir. 1984) .................................................................. 21

# TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

*Giffords Oil Co. v. Wild*,
   483 N.Y.S.2d 104 (2d Dep't 1984)......................................................................... 21

*Givenchy S.A. v. William Stuart Indus., Ltd.*,
   1986 U.S. Dist. LEXIS 28403 (S.D.N.Y. Mar. 10, 1986) ................................. 11

*Green Party v. New York State Bd. of Elections*,
   389 F.3d 411 (2d Cir. 2004) ................................................................................. 10

*Hadden v. Consolidated Edison*,
   45 N.Y.2d 466, 410 N.Y.S.2d 274 (N.Y. 1978) ................................................. 17

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,
   556 F. Supp. 2d 1122 (E.D. Cal. 2008)................................................................... 8

*Hudson Hotels Corp. v. Choice Hotels Int'l*,
   995 F.2d 1173 (2d Cir. 1993) ............................................................................... 19

*IKON Office Sol'ns v. Leichtnam*,
   2003 WL 251954 (W.D.N.Y. Jan. 3, 2003) ............................................... 15, 23

*Inflight Newspapers, Inc. v. Magazines-In-Flight, LLC*,
   990 F. Supp. 119 (E.D.N.Y. 1997) ...................................................................... 18

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions*,
   920 F.2d 171 (2d Cir. 1990) ................................................................................. 19

*Interactive Edge, Inc. v. Martise*,
   1998 U.S. Dist. LEXIS 801 (S.D.N.Y. Jan. 30, 1998) ...................................... 23

*International Airport Ctrs., L.L.C. v. Citrin*,
   440 F.3d 418 (7th Cir. 2006)..................................................................... 8, 9, 10

*Jet One Group v. Halcyon Jet Holdings, Inc.*,
   2009 U.S. Dist. LEXIS 72579 (E.D.N.Y. Aug. 14, 2009)......................... 7, 8, 10

*Kraft Gen. Foods v. Allied Old English*,
   831 F. Supp. 123 (S.D.N.Y. 1993) ...................................................................... 12

*Kuklachev v. Gelfman*,
   2009 U.S. App. LEXIS 22700 (2d Cir. Oct. 16, 2009)...................................... 11

*Lamdin v. Broadway Surface Advertising Corp.*,
   272 N.Y. 133, 5 N.E.2d 66 (1936)....................................................................... 18

*Leo Silfen, Inc. v. Cream*,
   328 N.Y.S.2d 423 (1972) ....................................................................................... 21

*Midland Walwyn Cap. Inc. v. Spear, Leeds & Kellogg*,
   1992 U.S. Dist. LEXIS 14289 (S.D.N.Y. Sept. 22, 1992)................................. 14

*Nederlandse Erts-Tankersmaatschappij, N. V. v. Isbrandtsen Co.*,
   339 F.2d 440 (2d Cir. 1964) ................................................................................. 13

*Nutmeg Techs., Inc. v. Mahshie*,
   1989 WL 60285 (N.D.N.Y. June 6, 1989) ......................................................... 21

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Orbit One Comm'ns, Inc. v. Numerex Corp.*,
692 F. Supp. 2d 373 (S.D.N.Y. 2010)......................................................... 7, 8, 10

*Pacific Aerospace & Elecs., Inc. v. Taylor*,
295 F. Supp. 2d 1188 (E.D. Wash. 2003) ........................................................ 8, 16

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
344 F.3d 184 (2d Cir. 2003)................................................................................. 9

*Rompalli v. Portnova*,
2010 U.S. Dist. LEXIS 58289 (S.D.N.Y. May 5, 2010)..................................... 14

*Sapient Corp. v. Singh*,
149 F. Supp. 2d 55 (S.D.N.Y. 2001) ................................................................. 23

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage*,
119 F. Supp. 2d 1121 (W.D. Wash. 2000)...................................................... 8, 17

*State of N.Y. v. U.S. Metals Ref. Co.*,
771 F.2d 796 (3d Cir. 1985).............................................................................. 15

*Telecom Intl. Am., Ltd. v. AT&T Corp.*,
280 F.3d 175 (2d Cir. 2001).............................................................................. 22

*Telerate Syst. Inc. v. Caro*,
689 F. Supp. 221 (S.D.N.Y. 1988) .................................................................... 19

*Tough Traveler, Ltd. v. Outbound Prods., Taymor Indus., Ltd.*,
60 F.3d 964 (2d Cir. 1995)................................................................................ 11

*Transperfect Translations Int'l v. Merrill Corp.*,
2004 U.S. Dist. LEXIS 24014 (S.D.N.Y. Nov. 30, 2004) ................................. 12

*TravelClick, Inc. v. Open Hospitality Inc.*,
2004 U.S. Dist. LEXIS 14395 (S.D.N.Y. July 27, 2004) ............................ 12, 14

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*,
749 F. Supp. 473 (S.D.N.Y. 1990) ............................................................... 15, 23

*ViChip Corp. v. Lee*,
438 F. Supp. 2d 1087 (N.D. Cal. 2006) .............................................................. 8

*Webcraft Techs., Inc. v. McCaw*,
674 F. Supp. 1039 (S.D.N.Y. 1987) .................................................................. 21

*Worldwide Sports Nutritional Supplements, Inc. v. Five Star Brands, LLC*,
80 F. Supp. 2d 25 (N.D.N.Y. 1999).................................................................. 12

### STATUTES

18 U.S.C. § 1030 (a)(1)................................................................................... 6, 16

18 U.S.C. § 1030(g)............................................................................................. 6

*Restatement (Second) of Agency* § 112............................................................... 9

*Restatement of Torts* § 757................................................................................ 19

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

## RULES

FED. R. CIV. P. 8(a)(3)........................................................................................... 5, 6

Wright & Miller, FED. PRAC. AND PROC., Civil 3d § 1255 ........................................ 6

Plaintiff Major, Lindsey & Africa, LLC ("MLA") respectfully submits this memorandum of law in opposition to Defendant Sharon Mahn's ("Mahn") motion to dismiss and/or stay MLA's claims and in support of its cross-motion for expedited discovery.

## I.   PRELIMINARY STATEMENT

This case concerns egregious acts of misappropriation, disloyalty and fraudulent conduct by a rogue employee and her outside conspirators. MLA is a legal search firm. It employed Mahn as a managing director in New York City, where she developed and worked primarily with its partner-level attorney candidates and law firm clients. Unbeknownst to MLA, Mahn engaged in a secret campaign to misappropriate confidential information and trade secrets from MLA's computer database and disseminate them to its competitors, including Defendants Joshua Kagan, Kagan Consultants, Inc., Carlo Pecorari and Parker Leland, Inc. They used this information to damage MLA's business relationships and usurp its business opportunities. MLA accordingly seeks permission to engage in expedited discovery so it may promptly secure a preliminary injunction to prevent Defendants from inflicting any further irreparable injury.

Instead of agreeing to any form of expedited discovery, Mahn filed the instant motion to dismiss and/or stay this action. She argues: (1) MLA's claims against her for injunctive relief should be dismissed in favor of arbitration, even though such claims are specifically excluded from her arbitration agreement; (2) MLA's claim under the Computer Fraud and Abuse Act ("CFAA") should be dismissed because she was permitted access to its computer systems, even though she accessed them to misappropriate their contents, which was obviously beyond the scope of her authorization; and (3) this entire case, including MLA's claims for preliminary injunctive relief, should be stayed until the arbitration is concluded. None of Mahn's arguments is valid.

First, MLA has an arbitration agreement with Mahn only, not the other defendants, and that agreement expressly excludes from its scope the claims asserted here for injunctive relief.

Second, the CFAA prohibits accessing protected computers without authorization or in excess of authorized access.  MLA has alleged that Mahn accessed its computers beyond her authorization when she repeatedly went into its database to misappropriate and disseminate to competitors its confidential information and trade secrets.  Contrary to Mahn's contention, MLA has stated a viable claim under the CFAA.

Third, the Court should not stay this action against Mahn and the other defendants because MLA's injunctive relief cannot wait until the conclusion of a lengthy arbitration against Mahn.  A preliminary injunction will not pose any risk of conflict with any final determination by an arbitrator.  Also, the delay in seeking injunctive relief is excusable because MLA was investigating Defendants' misconduct and discussing settlement of this case.

Despite sending cease-and-desist letters to Mahn, Pecorari and Kagan in November 2009, it appears that Mahn has continued to use and/or divulge, at least to Pecorari and Parker Leland MLA's confidential candidate information.  It is therefore critical to discover as soon as possible the extent to which the defendants have continued to use and/or disclose MLA's confidential information and trade secrets.  The Court should accordingly deny Mahn's motion to dismiss and grant MLA's cross-motion for expedited discovery.

## II.   STATEMENT OF FACTS

### A.   Mahn Concealed Her Misconduct From MLA

Mahn joined MLA as a Managing Director in its Partner Practice Group in October 2005. (Compl. ¶ 8.)  She was a key senior manager, who regularly accessed and used MLA's highly valuable Confidential Information and Trade Secrets in servicing MLA's law firm clients and

partner-level candidates.[1]  (*Id.*, ¶ 16.)  As a condition of employment, Mahn expressly promised to, *inter alia*, maintain the secrecy of this information.  (*Id.*, ¶¶ 17-19, Exh. 1.)

Unbeknownst to MLA, Mahn repeatedly took and disclosed to MLA's competitors, including co-defendants Joshua Kagan ("Kagan") and Carlo Pecorari ("Pecorari"), confidential information and trade secrets from MLA's protected computer database.  (Compl. ¶¶ 24, 55.) She aggressively encouraged these competitors to usurp MLA's business opportunities and aided their efforts by soliciting MLA's candidates for them under a false name.  (*Id.*, ¶¶ 26-29, 32-33, 37-38, 41, 43, Exhs. 2-11, 19-25, 34-36, 37-38, 39.)  All the while, Mahn, Kagan and Pecorari concealed their wrongful conduct, which prevented MLA from discovering it and taking appropriate action.  (*Id.*, ¶¶ 31, 36, Exhs. 16-18, 29-32.)

**B.    MLA Commenced An Investigation After Discovering The Tip Of The Iceberg**

In or about November 2009, MLA learned that Pecorari was trying to place one of its candidates and, later, that Mahn was corresponding with Pecorari.  (Compl., ¶ 44.)  After Mahn eventually admitted divulging confidential information from MLA's database, MLA terminated her employment.  (*Id.*, ¶ 45.)  That day, MLA sent letters to Mahn and Pecorari requesting that they, *inter alia*, cease and desist and provide a full accounting of their wrongdoing.  (*Id.*, ¶ 46.) A similar letter was sent to Kagan one week later.  (*Id.*, ¶ 50.)

Two days later, Mahn agreed to produce the emails in her personal email accounts that contain any confidential information, trade secrets or other property belonging to MLA, any communications regarding any candidates or clients of MLA, and/or any communications

---

[1]  The term "Confidential Information and Trade Secrets" is defined in the Complaint to include proprietary lists of those clients and candidates, contracts, proposals, clients' current or anticipated personnel needs, candidates' identities, clients, estimated volume of portable business, actual and desired billing rates, and their desire to explore new career opportunities and willingness to do so with certain law firms and/or businesses.  (Compl., ¶ 13.)

regarding any solicitation of MLA employees.  (Compl., ¶ 47.)  Over the next five months, Mahn

eventually produced more than 15,000 pages of condensed emails and attachments from her

account at www.hotmail.com.  (*Id.*, ¶ 48.)  During and since that time, MLA's counsel analyzed

those emails and explored with MLA its potential legal recourse, including preliminary

injunctive relief.  (*See* accompanying Declaration of David S. Warner in Opposition to

Defendant Mahn's Motion to Dismiss and/or Stay and in Support of Plaintiff's Cross-Motion for

Expedited Discovery, dated July 30, 2010 ("Warner Decl."), at ¶ 2.)

        Despite MLA's efforts, Defendants have neither affirmed that they will cease and desist

nor provided an accounting.  (Compl., ¶¶ 49, 51.)  On the contrary, Defendants have, upon

information and belief, continued their illicit scheme.  (*Id.*, ¶ 52.)  Indeed, Pecorari confirmed

that Mahn is still working with him to place through his legal search enterprise, Parker Leland, a

confidential MLA candidate to whom she was assigned at MLA.  (*Id.*, Exh. 40.)

### C.     MLA Filed This Complaint To Obtain Relief That Is Outside The Scope Of Mahn's Arbitration Agreement

        The only arbitration agreement before the Court is the one between MLA and Mahn.  It

states, in pertinent part, that: "[c]laims ... by the Company ... seeking injunctive ... relief with

respect to any confidentiality, return of property, non-solicitation, non-compete, or

nondisparagement covenants I have with the Company or any other intellectual property rights

are not covered by this Agreement...."  (Mogul Decl., Exh. A, p. 2 (emphasis added).)  MLA

accordingly filed its complaint in this action requesting from Mahn preliminary and permanent

injunctive relief on all claims for which such relief is available.  (*See* Compl., p. 30.)

### D.     The Parties Engaged In Settlement Discussions After MLA Served The Complaint

        Since serving the complaint in the above-captioned action, and until Mahn filed her

motion to dismiss, MLA participated in settlement discussions with Mahn and the other

defendants.  (Warner Decl., ¶ 3.)  These discussions included a proposed, stipulated injunction.

(Letter from Anthony Scotto to the Court, dated July 14, 2010 (Docket #24), p.1.)  Due to these

discussions, MLA did not move for expedited discovery or injunctive relief.  (Warner Decl., ¶ 3.)

### E.   Defendants Have Ignored MLA's Request For Expedited Discovery

MLA asked the defendants to agree to expedited discovery, but they ignored its request.

(Warner Decl., ¶ 4.)

## III.   ARGUMENT

### A.   The Court Should Sustain MLA's Claims Against Mahn For Injunctive Relief Because They Are Excluded From Her Arbitration Agreement

Mahn's arbitration agreement states, in pertinent part, that: "[c]laims ... by the Company

... seeking injunctive ... relief with respect to any confidentiality, return of property, non-

solicitation, non-compete, or nondisparagement covenants I have with the Company or any other

intellectual property rights are not covered by this Agreement...."  (Mogul Decl., Exh. A, p. 2

(emphasis added).)  Despite this language, Mahn argues that the Court should dismiss MLA's

claims against her for injunctive relief in favor of arbitration.  The Court should reject this

argument.  It is premised on a misconstruction of MLA's claims and an erroneous supposition

that a preliminary injunction would lead to inconsistent results in the unlikely event Mahn

prevails in arbitration.

#### 1.   MLA Seeks Injunctive Relief On All Claims For Which That Relief Is Available, Not Just Its CFAA Claim

There is no merit to Mahn's first contention that the only claim for which MLA seeks

preliminary injunctive relief is its claim under the Computer Fraud and Abuse Act ("CFAA").

According to the Federal Rules of Civil Procedure, "a pleading that states a claim for relief must

contain: ... a demand for relief sought, which may include relief in the alternative or different

types of relief."  FED. R. CIV. P. 8(a)(3).  The relief requested for each claim may be alleged

generally and need not be stated within each particular claim.  *See Bartz v. Carter*, 709 F. Supp. 827, 829 (N.D. Ill. 1989) (holding that the plaintiffs complied with FED. R. CIV. P. 8(a)(3) by stating generally the relief sought at the end of the complaint, rather than within each individual count); Wright & Miller, FED. PRAC. AND PROC., Civil 3d § 1255 at p. 507 ("the pleader need only make one demand for relief regardless of the number of claims that are asserted").

Contrary to Mahn's contention, MLA requests injunctive relief on more than just its CFAA claim.  MLA asserts claims concerning Mahn's confidentiality, return of property and non-solicitation covenants, as well as MLA's intellectual property rights.  These covenants and rights are at issue in every claim asserted against Mahn.  The "Relief Requested" clause of the Complaint (Compl., p. 30), which Mahn has chosen to ignore, indicates that MLA seeks preliminary injunctive relief on its claims as a whole.  The foregoing authorities demonstrate that this request applies to all claims in the Complaint for which such relief is available.  As MLA's claims for injunctive relief against Mahn are clearly outside the scope of her arbitration agreement, the Court should deny Mahn's motion to dismiss.

> **2.    MLA's Claim For Preliminary Injunctive Relief Under The CFAA Is Properly Before The Court Because It Relates To Mahn's Restrictive Covenants And MLA's Intellectual Property Rights**

The CFAA prohibits one from accessing a protected computer "without authorization" or beyond "authorized access."  18 U.S.C. § 1030(a)(1).  A defendant may violate the CFAA by accessing her employer's protected computer to misappropriate the confidential information in it. *Calyon v. Mizuho Sec. USA, Inc.*, 2007 U.S. Dist. LEXIS 66051, at *2-4 (S.D.N.Y. Sept. 5, 2007).  Persons who violate the CFAA may be liable for injunctive relief. *Id.*, § 1030(g).

Here, Mahn repeatedly took from MLA's protected computer database its Confidential Information and Trade Secrets and gave them to competitors, for which MLA accordingly seeks injunctive relief.  (Compl., ¶¶ 53-59.)  Mahn had to know her misconduct contravened MLA's

wishes and interests as it was in direct contravention of her covenant to "strictly maintain the confidentiality of all trade secrets and other proprietary or confidential information" to which she was "exposed" during her employment.  (Compl., Exh. 1, p. 2.)  As Mahn's arbitration agreement expressly allows MLA to bring in court "[c]laims ... seeking injunctive ... relief with respect to any [of Mahn's] confidentiality ... covenants" (Mogul Decl., Exh. A, p. 2), MLA's claim under the CFAA for injunctive relief clearly falls outside the scope of that agreement.

Mahn's arbitration agreement also excludes "[c]laims ... seeking injunctive ... relief with respect to ... any other intellectual property rights...."  (Mogul Decl., Exh. A, p. 2.)  MLA thus seeks injunctive relief under the CFAA with respect to its intellectual property rights as a provisional remedy for Mahn's misappropriation of its Confidential Information and Trade Secrets, the value of which she impaired by divulging them to others.

In short, MLA's claim for injunctive relief under the CFAA is not arbitrable because it seeks such relief with respect to Mahn's confidentiality covenant and its intellectual property rights.  The Court should accordingly deny Mahn's motion to dismiss.

### B. The Court Should Sustain MLA's Claim Under The CFAA Because Mahn Accessed MLA's Computer Database Beyond Her Authorization

Mahn's argument – that she was authorized to access MLA's computer systems – points up a fundamental conflict in case authority interpreting the CFAA.  Relying on *Orbit One Comm'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 384 (S.D.N.Y. 2010), and *Jet One Group v. Halcyon Jet Holdings, Inc.*, 2009 U.S. Dist. LEXIS 72579 *16-17 (E.D.N.Y. Aug. 14, 2009), Mahn asserts that MLA's CFAA claim fails because she was permitted access to its computer systems.

However, Mahn's argument ignores the decisions of multiple courts, including both the First Circuit and Seventh Circuit, that have held that employees who, like Mahn, accessed their

employer's computer to obtain information for their own benefit or for a competitor have acted "without authorization" or "exceed[ed] authorized access" in violation of the CFAA. *See, e.g., International Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006) (Posner, J.) (explaining that employees' authority to access their employer's computer terminates when they use the computer to violate their duty of loyalty); *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582-84 (1st Cir. 2001); *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008); *ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1100 (N.D. Cal. 2006); *Pacific Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1195-97 (E.D. Wash. 2003); *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage*, 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000).

Further, the *Jet One Group* and *Orbit One* decisions directly conflict with Judge Owen's opinion in *Calyon v. Mizuho Sec. USA, Inc.*, 2007 U.S. Dist. LEXIS 66051, at *3 (S.D.N.Y. Sept. 5, 2007). In *Calyon*, Judge Owen refused to dismiss a CFAA claim against the defendant/employees who copied information from their former employer's computers and emailed it to a competitor in violation of their former employer's internal email policies. *Id.* at *2-3. The Court held that this activity qualified as access "without authorization" and that it "exceed[ed] authorized access," under the CFAA because the "employee[s] had to know [their use of their employer's computer] was in contravention of the wishes and interests of [their] employer." *Id.* at *4. In contrast, rather than focus on the interests and wishes of the employer, the opinions in *Orbit One* and *Jet One Group* analyzed the damage provisions of the CFAA to conclude that the statute's purpose was to address the activities of computer hackers rather than rogue employees. MLA submits that a better reasoned analysis of the CFAA's scope should focus on the "authorization" language in the provision at issue.

It is axiomatic that Mahn's authorization to access MLA's computer system was predicated on an agency relationship between the parties, as Mahn acknowledges.  (*See* Def.'s Mem., p. 12 ("... any such access by Ms. Mahn would have been permitted as part of her employment").  As an employee, Mahn indisputably owed MLA a duty or loyalty.  *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) ("Under New York law, an agent is obligated to be loyal to its employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." (quotations and citations omitted)).  It follows, then, that:

> Unless otherwise agreed, the authority of the agent terminates if, without knowledge of the principal he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to his principal.

*Restatement (Second) of Agency* § 112 (illustrating that "P employs A, a traveling salesman, to sell goods and receive the price.  At the beginning of his trip, A embezzles a portion of the amounts received and intends to continue to do so.  A is not authorized to continue to sell.").

In this context, Judge Posner determined in *International Airport Centers, LLC v. Citrin*, that a former employee's breach of his duty by deleting information from the company's computer terminated the employee's agency relationship "and with it his authority to access the laptop, because the only basis of his authority had been that relationship."  440 F.3d at 420-21.

In this case, MLA has alleged that Mahn exceeded the scope of her authority by accessing and using information from MLA's database contrary to MLA's interests.  Certainly, Mahn, like the former employees in *Calyon*, knew that in doing so she was acting against MLA's wishes and interests.  The multiple emails attached to the Complaint demonstrate as much.

Moreover, Mahn expressly agreed at the inception of her employment with MLA not to copy information from its database and disseminate it.  (Compl., ¶ 18.)  In violation of her contractual duty, as well as her duty of loyalty, Mahn took MLA's confidential information and disclosed it to competitors – without authorization.  (Compl. ¶¶ 24, 55.)

In no fair interpretation of the term "authorization" can Mahn argue that she was permitted to access MLA's database to misappropriate its confidential information.  The very purpose of the authorization, consistent with Mahn's contractual commitment and duty of loyalty, was to access the database for purposes in the best interests of MLA.  The agency relationship on which this access was predicated crumbled when Mahn breached her duty of loyalty by stealing from MLA.  *Orbit One* and *Jet One Group* ignore this foundational basis for an employee's access to an employer's confidential information in the first instance.  Thus, in accord with *International Airport Centers* and *Calyon*, MLA submits that it has sufficiently alleged facts to show that Mahn accessed its protected computers beyond the scope of her authorization.  Therefore, MLA submits that its CFAA claim should survive as plead.

### C.   The Court Should Allow MLA To Proceed With Its Non-Arbitrable Claims Because A Preliminary Injunction May Be Issued Before Final Adjudication

Contrary to Mahn's contention, MLA's claims for <u>preliminary</u> injunctive relief may be resolved before its claims for monetary and permanent injunctive relief.  To obtain a preliminary injunction, the movant must show (1) irreparable injury absent injunctive relief, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in movant's favor.  *Green Party v. New York State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004).  As a preliminary injunction is merely a determination that the plaintiff has been injured irreparably and is likely to succeed on the merits, there is no risk that it will conflict with a final decision on the merits.

Mahn misplaces her reliance on *Givenchy S.A. v. William Stuart Indus., Ltd.*, 1986 U.S. Dist. LEXIS 28403, at \*13 (S.D.N.Y. Mar. 10, 1986).  There, the court refused to stay the non-arbitrable claim for injunctive relief largely because it had already denied the plaintiff's motion for a preliminary injunction.  *Id.*  Here, MLA has not yet moved for a preliminary injunction.  If MLA is forced to wait until the arbitration is concluded, it will be too late.

> **1.    MLA's Good Faith Efforts In Investigating Mahn's Misconduct Should Not Prevent It From Obtaining A Preliminary Injunction**

Mahn argues that the Court should stay MLA's claims for injunctive relief against her because it has taken several months to investigate her wrongdoing.  It is well settled that any delay caused by good faith efforts to investigate unlawfully competitive activities does not negate a presumption of irreparable harm.  *See, e.g., Kuklachev v. Gelfman*, 2009 U.S. App. LEXIS 22700, at \*3 (2d Cir. Oct. 16, 2009) (affirming that the plaintiffs' 18-month delay in moving for a preliminary injunction was excusable "based, in part, on 'the need to investigate the nature of the infringement and to explore what legal recourse was possible'").  At least one of the cases on which Mahn relies also supports this proposition.  *See Tough Traveler, Ltd. v. Outbound Prods., Taymor Indus., Ltd.*, 60 F.3d 964, 968 (2d Cir. 1995) (noting that delay will not negate the presumption of irreparable harm if it was caused by plaintiff's "ignorance of the defendant's competing product or the plaintiff's ... good faith efforts to investigate the alleged infringement") (quoting *Citibank, N.A. v. City Trust*, 756 F.2d 273, 276 (2d Cir. 1985)).

Here, MLA did not discover the breadth of Mahn's carefully concealed misconduct until recently, after she eventually produced over <u>15,000 pages</u> of condensed emails.  MLA needed analyze them and explore its potential legal recourse, including preliminary injunctive relief.  In light of Mahn's delayed disclosure after hiding her misconduct for several years, it would be patently unfair to now bar MLA from securing any preliminary injunctive relief.

> **2.     MLA's Efforts To Settle With Mahn And The Other Defendants Should Not Prevent It From Obtaining A Preliminary Injunction**

Mahn also contends that MLA will not possibly be entitled to injunctive relief because it has not moved for it since filing the Complaint.  This argument is meritless because MLA was trying discussing a possible settlement of this dispute.

Since serving the Complaint, and until Mahn filed the instant motion, MLA participated in settlement discussions with Mahn and the other defendants.  Any delay for this purpose should not prevent MLA from obtaining a preliminary injunction.  *See Kraft Gen. Foods v. Allied Old English*, 831 F. Supp. 123, 136 n. 12 (S.D.N.Y. 1993) (stating that a party seeking a preliminary injunction "should not be penalized for any delay arising out of settlement efforts").

The cases on which Mahn relies are inapposite, for in none of them was the plaintiff's delay attributable to the defendants' deception or a settlement dialogue.  *See, e.g., Transperfect Translations Int'l v. Merrill Corp.*, 2004 U.S. Dist. LEXIS 24014, at *17 (S.D.N.Y. Nov. 30, 2004); *TravelClick, Inc. v. Open Hospitality Inc.*, 2004 U.S. Dist. LEXIS 14395, at *15 (S.D.N.Y. July 27, 2004); *Worldwide Sports Nutritional Supplements, Inc. v. Five Star Brands, LLC*, 80 F. Supp. 2d 25, 34-35 (N.D.N.Y. 1999); *Anderson Consulting LLP v. Am. Mgmt. Sys., Inc.*, 1995 U.S. Dist. LEXIS 12417, at *11-13 (S.D.N.Y. Aug. 28, 1995).

MLA's delay in moving for a preliminary injunction should be excused because it needed to investigate the nature and extent of Mahn's misconduct and tried to settle the dispute.  Staying its claims for preliminary injunctive relief until the arbitration is concluded will unduly prejudice MLA and further reward Mahn for concealing her misconduct.  In short, the Court should allow MLA to proceed with its non-arbitrable claims against Mahn.

>        **3.      The Court Should Allow MLA To Proceed Against The Other
>               Defendants, With Whom It Has No Arbitration Agreement**

Even though none of the other defendants has requested such relief, Mahn asks the Court

to stay indefinitely MLA's claims against them pending arbitration of its claims against her.

This request should be denied.

>        **a.      Staying MLA's Claims Against The Other Defendants Would
>               Unduly Delay Preliminary Injunctive Relief Against Them**

Neither Mahn nor the other defendants have shown that a stay is warranted.  In *Citrus*

*Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 225 (2d Cir. 1991), on which Mahn relies,

the court of appeals agreed that a stay was not warranted against the party with whom there was

no arbitration agreement.  The court noted that a defendant who is not party to the arbitration

agreement has the burden to establish that a stay is warranted, stating:.

> Without attempting to list all relevant factors, we point out that the
> defendant[] should demonstrate to the satisfaction of the court that
> [it] has not taken nor will take any steps to hamper the progress of
> the arbitration proceeding, that the arbitration may be expected to
> conclude within a reasonable time, and that such delay as may
> occur will not work undue hardship.

*Id.* (quoting *Nederlandse Erts-Tankersmaatschappij, N. V. v. Isbrandtsen Co.*, 339 F.2d 440, 442

(2d Cir. 1964)).  Here, the other defendants have made no effort to, and cannot, meet this burden.

The stay that Mahn requests will work an undue hardship on MLA.  First, it will deprive

MLA of the ability to obtain on an expedited basis evidence to support a preliminary injunction

pending the outcome of the arbitration.  Second, the breadth of the defendants' misconduct and

their refusal to affirm that they will cease and desist renders it highly likely that they will

continue to harm MLA irreparably by using its Confidential Information and Trade Secrets.

Third, these defendants may simply dissipate their assets and destroy evidence during the stay.

In short, MLA will not receive meaningful relief unless the defendants are at least enjoined from further unfair competition and directed to preserve relevant evidence and their assets.

As noted above, there is no risk that a preliminary injunction will conflict with any final decision on the merits.  Moreover, the claims against the other defendants are not all dependent on those against Mahn.  For example, the unjust enrichment claim was brought solely against the co-defendants.  (*See* Compl., ¶¶ 96-97.)  Determining whether they were unjustly enriched will have no bearing on the claims against Mahn as MLA need only prove (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.  *See Albrechta v. Broome Cty. Indus. Dev. Agency*, 274 A.D.2d 651, 652 (3d Dep't 2000).  Whether these defendants were enriched at MLA's expense and whether it is against equity and good conscience to allow them to retain MLA's Confidential Information and Trade Secrets, along with the business they usurped, can be determined without Mahn.

Mahn misplaces her reliance on the following cases in which the court granted stays for non-signatories in favor of arbitration because none of the plaintiffs in those case took steps to obtain injunctive relief and a stay did not cause them undue hardship.  *See TravelClick*, 2004 U.S. Dist. LEXIS 14395 at *15-20; *Midland Walwyn Cap. Inc. v. Spear, Leeds & Kellogg*, 1992 U.S. Dist. LEXIS 14289, at *4-5 (S.D.N.Y. Sept. 22, 1992); *Rompalli v. Portnova*, 2010 U.S. Dist. LEXIS 58289, at *18-19 (S.D.N.Y. May 5, 2010); *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1995).  In contrast, MLA seeks expedited discovery here to obtain evidence to support a preliminary injunction.  Any stay of its claims against the co-defendants will cause MLA undue hardship by curtailing its ability to obtain such relief.

In sum, staying this case against the co-defendants who have sat silent will not promote judicial economy.  On the contrary, it will unduly delay the relief to which MLA is entitled, particularly injunctive relief.  The Court should deny Mahn's motion accordingly.

**D.    The Court Should Order Expedited Discovery Against Defendants So MLA May Promptly Ascertain The Full Breadth Of Their Misconduct And Avoid Any Further Irreparable Injury**

Rule 26 of the Federal Rules of Civil Procedure "provides very broad discovery and gives the trial court wide discretion to manage the process."  *State of N.Y. v. U.S. Metals Ref. Co.*, 771 F.2d 796, 805 (3d Cir. 1985).  Courts have consequently allowed plaintiffs to engage in expedited discovery when presented with evidence of misappropriation of trade secrets.  *See, e.g., IKON Office Sol'ns v. Leichtnam*, 2003 WL 251954, at *3 (W.D.N.Y. Jan. 3, 2003) (allowing expedited discovery where the plaintiff had evidence of the former employee's misappropriation of confidential information and solicitation of the plaintiff's customers); *Delphine Software Int'l, S.A.R.L. v. Electronic Arts, Inc.*, 1999 WL 627412, at *3 (S.D.N.Y. Aug. 18, 1999) (allowing expedited discovery because the plaintiff had legitimate concerns of misappropriation of trade secrets and evidence of it would diminish as time passed).

To warrant expedited discovery, there must be "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted."  *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (citations omitted).  Those requirements are met here.

**1.    MLA Has Suffered And Will Continue To Suffer Irreparable Injury**

In New York, there is a rebuttable presumption of irreparable harm where there is a "danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to

a wider audience or otherwise irreparably impair the value of those secrets." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).  Here, several factors support the presumption that MLA will continue to be irreparably harmed by the defendants' use and/or dissemination of its trade secrets.

First, Mahn wrongfully took MLA's Confidential Information and Trade Secrets and disclosed them to multiple competitors during her employment.  She has not returned any of that data.  Nor has she affirmed that she will cease and desist from further use or disclosure.  Indeed, as recently as March 2010, Pecorari confirmed that he and Mahn were working to place one of MLA's attorney candidates though his firm, Parker Leland.  (Compl., ¶ 52.)  It is therefore appropriate to conclude that MLA is at risk of future irreparable harm from the defendants' ongoing use and disclosure of its Confidential Information and Trade Secrets.

## 2.    MLA Is Likely To Succeed On the Merits Of Its Claims

MLA seeks expedited discovery to confirm that the Court should award injunctive relief on the following claims: (1) violation of the CFAA; (2) breach of contract; (3) breach of fiduciary duty; (4) breach of the duty of loyalty; (5) misappropriation; (6) unfair competition; (7) unjust enrichment; and (8) tortious interference with contract.  For the reasons set forth below, MLA is likely to prevail on all of these claims.

### a.    MLA Will Prevail On Its CFAA Claim Against Mahn

The evidence attached to the complaint shows that Mahn violated the CFAA.  It shows that she repeatedly misappropriated from MLA's protected computer database, without MLA's knowledge or consent, Confidential Information and Trade Secrets and disclosed them to several competitors.  Mahn did not have authority to access to MLA's computers for this purpose.  *Cf. Calyon*, 2007 U.S. Dist. LEXIS 66051, at *3.  Her conduct accordingly violates 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4) and 1030(a)(5)(C).  *See, e.g., Pacific Aerospace & Elec., Inc. v.*

*Taylor*, 295 F. Supp. 2d 1188, 1196 (E.D. Wash. 2003) (noting an employer may sue a former employee under Section 1030(a)(4) for attempting to gain a competitive edge by using proprietary information obtained through the unauthorized access of its computer database; *Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage*, 119 F. Supp. 2d 1121, 1124-25 (W.D. Wash. 2000) (holding that employees' disclosure of confidential information obtained from improper access to their employer's computer may violate Sections 1030(a)(2)(C), 1030(a)(4) and 1030(a)(5)(C)).

### b.   MLA Will Prevail On Its Contract Claim Against Mahn

Mahn signed an employment agreement with MLA in which she agreed to "strictly maintain the confidentiality of all trade secrets and other proprietary or confidential information to which [she] may be exposed during [her] employment with MLA." (Compl. ¶ 18, Exh. 1, p. 2.)  Mahn also agreed that her services for MLA were "of special character such that MLA cannot be compensated adequately in damages for ... [her] breach or threatened breach of any of these covenants and that, as a result, MLA is entitled to temporary, preliminary, and/or permanent injunctive relief...."  (Compl. ¶ 22, Exh. 1, p. 4.)  Mahn cannot dispute that she breached her employment agreement with MLA as the evidence attached to the Complaint demonstrates that she disclosed confidential candidate information to competitors, and suffered damages as a result.  MLA will accordingly prevail on its breach of contract claim against Mahn.

### c.   MLA Will Prevail On Its Breach Of Fiduciary Duty And Breach Of Duty Of Loyalty Claims Against Mahn

Inherent in an employee's fiduciary duty and duty of loyalty to her employer is the obligation "to exercise the utmost good faith and loyalty to his or her employer in the performance of his or her duties."  *Hadden v. Consolidated Edison*, 45 N.Y.2d 466, 410 N.Y.S.2d 274, 276 (N.Y. 1978).  This means that an employee is "prohibited from acting in any

manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Lamdin v. Broadway Surface Advertising Corp.*, 272 N.Y. 133, 138, 5 N.E.2d 66 (1936).

Mahn's misuse of MLA's confidential client and candidate information and disclosure to MLA's competitors, including Defendants Pecorari and Kagan, constitutes a fundamental breach of her fiduciary duty and duty of loyalty to MLA. *See ABKCO Music Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 994 (2d Cir. 1983) (quoting *Byrne v. Barrett*, 268 N.Y. 199, 206 (1935)) (declaring an employee has a duty not to disclose or "use confidential knowledge acquired in his employment in competition with his principal"); *Inflight Newspapers, Inc. v. Magazines-In-Flight, LLC*, 990 F. Supp. 119, 137 (E.D.N.Y. 1997) ("an employee's use of an employer's trade secrets or confidential customer information can be enjoined even in the absence of a restrictive covenant when such conduct violates a fiduciary duty owed by the former employee to his former employer" (citation omitted)). Mahn also breached her fiduciary duty and duty of loyalty by encouraging Pecorari and Kagan to usurp MLA's business opportunities. *See generally Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 671-72 (S.D.N.Y. 2005) (finding an employee breached his fiduciary duty by encouraging one of his employer's potential customers to give its business to a competitor), *aff'd*, 2006 U.S. App. LEXIS 25889 (2d Cir. Oct. 19, 2006).

### d.    MLA Will Prevail On Its Misappropriation Claim Against Mahn

To prove a claim of misappropriation of confidential information or trade secrets, the plaintiff must prove (1) the plaintiff possesses a trade secret or confidential information, and (2) the defendant is using that trade secret in breach of a confidence or duty. *Doubleclick, Inc. v. Henderson*, 1997 N.Y. Misc. LEXIS 577, at *9 (Sup. Ct. N.Y. Cty., Nov. 5, 1997) (citing *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions*, 920 F.2d 171, 173 (2d Cir. 1990)).

The confidential candidate data that Mahn revealed to her co-defendants and other competitors qualify as trade secrets.  When defining a trade secret, courts in New York look to the Restatement of Torts.  *Telerate Syst. Inc. v. Caro*, 689 F. Supp. 221, 231 (S.D.N.Y. 1988).  The Restatement defines a "trade secret" as "any formula, pattern, device, or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."  *Restatement of Torts* § 757, comment (b) (1939).

To determine whether information constitutes a trade secret, courts consider the following factors: (1) the amount of effort or money expended by the business in developing the information; (2) the value of the information to the business and its competitors; (3) the extent to which the information is known outside of the business; (4) the extent to which it is known by employees and others involved in the business; (5) the extent of measures taken by the business to guard the secrecy of the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.  *See Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 918 (N.Y. 1993) (quoting *Restatement of Torts* § 757, comment (c)); *Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 n. 1 (2d Cir. 1993); *Integrated Cash Management Servs., Inc*., 920 F.2d at 173.  In this case, the confidential candidate and client information that Mahn disclosed to competitors qualifies as a trade secret.

First, the information is not known outside of MLA's business.  Mahn revealed to Kagan, Pecorari and other competitors information about MLA's partner-level candidates who expressed interest in moving to another law firm, the estimated value of their portable business, their billing rates, their annual billable hours and confidential information stating that a law firm had retained MLA to locate a candidate with a certain background.  (*See, e.g.,* Compl., Exhs. 3, 4, 16, 26, 30,

35, 36, 37, 38, 39.)  This information is not publicly accessible and can be gleaned only from the candidates themselves.  (*See, e.g.,* Complaint, ¶¶ 1, 13, 27, 33.)

Second, MLA has taken significant steps to guard the secrecy of this information.  It requires its staff upon hire to enter into agreements that prohibit them from disclosing its trade secrets and confidential information during and after their employment with MLA.  It also limits access to the electronic repositories of this information by storing it in a secure, password-protected database. (*See, e.g., id.*, ¶¶ 13-14.)

Third, the information is highly valuable to MLA and its competitors.  For example, the emails attached to the Complaint show that Mahn disclosed information about several MLA partner-level candidates so her co-defendants could place them instead of MLA and share the revenue with Mahn.  (*See, e.g.,* Compl., Exhs. 2, 3, 4, 7, 9, 16, 26. 27, 30, 34, 35, 36, 37, 38, 39.) The other information Mahn disclosed, such as candidates' billing rates, billable hours and value of portable business, is extremely valuable in deciding where and how a candidate can be placed. (*See, e.g., id.,* ¶¶ 1, 15.)

Fourth, MLA has expended substantial time and resources in acquiring, developing and safeguarding its confidential client and candidate data.  For example, it developed client and attorney candidate lists and expended time and financial resources to develop password protected databases to house its confidential and proprietary information.  (*See, e.g., id.*, ¶¶ 13-14.)

Finally, it would be difficult to acquire the specific confidential client and candidate information that Mahn disclosed to Kagan, Pecorari and other competitors, such as the identity of the partner-level candidates interested in other career opportunities, their portable business, billing rates, and billable hours worked.  This information is not publicly accessible and can only

be acquired by assuring clients and candidates the safety in revealing such sensitive information. (*See, e.g., id.* ¶¶ 13-15.)

It is well settled that the information Mahn revealed to MLA's competitors qualifies as a trade secret because it was "developed by a business through substantial effort and kept in confidence ... and the information it contains is not otherwise readily ascertainable." *Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1063 (2d Cir.), *cert. denied*, 474 U.S. 844 (1985); *accord Leo Silfen, Inc. v. Cream*, 328 N.Y.S.2d 423, 428 (1972); *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (reversing as clearly erroneous a district court's finding that a customer list was not a trade secret where it would have been difficult to find those customers without the employee's assistance).

Courts have likewise granted trade secret protection to information about customers when, as here, they reflect the customers' needs and preferences. *Webcraft Techs., Inc. v. McCaw,* 674 F. Supp. 1039, 1044 (S.D.N.Y. 1987) (protecting as a trade secret a customer list that took great time and effort to compile, including "development of a specialized knowledge of the customer's operations and needs"); *Nutmeg Techs., Inc. v. Mahshie*, 1989 WL 60285, at *5-6 (N.D.N.Y. June 6, 1989) (holding that a customer list whose "customers are only cultivated after extensive efforts by [the plaintiff]" was a trade secret); *Giffords Oil Co. v. Wild*, 483 N.Y.S.2d 104, 106 (2d Dep't 1984) (holding that a customer list that required substantial time and money to compile and that contained information "which could only be achieved through personal solicitation" was a protectable trade secret).

The confidential information that Mahn revealed to Kagan and Pecorari thus qualifies a trade secret. Mahn took and used those trade secrets to benefit herself and MLA's competitors without MLA's knowledge or consent. She has continued to use MLA's trade secrets to unfairly

compete with MLA.  Accordingly, MLA will prevail on its misappropriation claim against Mahn.

> **e.     MLA Will Prevail On Its Unfair Competition Claim Against All Defendants**

Unfair competition exists "when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another." *Telecom Intl. Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001).  In this case, Defendants took and used MLA's confidential information to solicit MLA's candidates without MLA's knowledge or consent for their own benefit and advantage.  This is precisely the type of commercial piracy that this cause of action is designed to address.  Accordingly, MLA will prevail on its unfair competition claim against Defendants.

> **f.     MLA Will Prevail On Its Unjust Enrichment Claim Against The Other Defendants**

As discussed above, Kagan, Pecorari, Kagan Consultants and Parker Leland were all enriched at MLA's expense.  They took and used MLA's confidential partner-level candidate information, without MLA's knowledge or consent, to place them.  They did so for the purpose of usurping MLA's business, and received money from upon placing them.  Under these circumstances, it would be inequitable to allow them to retain MLA's Confidential Information and Trade Secrets or the money they obtained from it.  MLA will prevail on its unjust enrichment claim against Kagan, Pecorari, Kagan Consultants and Parker Leland.

> **g.     MLA Will Prevail On Its Tortious Interference Claims Against Defendants Pecorari And Parker Leland**

To establish a tortious interference claim under New York law, the plaintiff must show: (1) a valid contract exists; (2) the third party defendant had knowledge of the contract; (3) the

defendant intentionally and improperly procured the breach of the contract; and (4) the breach

resulted in damage to the plaintiff.  *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996).

Here, there can be no dispute that MLA had a valid contract with Mahn.  (*See* Compl.,

Exh. 1.)  Nor can there be any dispute that Pecorari knew of MLA's contract with Mahn as of at

least November 2009, when MLA sent its cease-and-desist letter.  Despite that knowledge,

Pecorari subsequently facilitated Mahn's continued breach of that contract, causing MLA to be

damaged.  (Compl., ¶¶ 35-36, 115-120, Exh. 40.)  MLA will prevail on its tortious interference

claims.

### 3.    The Expedited Discovery Sought is Designed To Avoid Further Irreparable Harm And Will Not Injure The Defendants

MLA seeks expedited production of documents relevant to its claims within ten days of

service of its requests, and depositions of Mahn, Pecorari and Kagan within fifteen days

thereafter.  This discovery is designed to avoid further irreparable harm, will not injure

Defendants, and is necessary to determine the full extent of Defendants' misconduct.

As noted above, courts have ordered expedited discovery in similar cases where the

plaintiff has alleged misappropriation of confidential information but does not yet know the

extent to which that information has been exploited.  *See, e.g., Twentieth Century Fox Film

Corp.*, 749 F. Supp. at 475; *Sapient Corp. v. Singh*, 149 F. Supp. 2d 55, 57-58 (S.D.N.Y. 2001)

(noting expedited discovery was ordered after the plaintiff alleged that the defendant formed a

competing company and was using the plaintiff's confidential information to solicit its clients);

*Interactive Edge, Inc. v. Martise*, 1998 U.S. Dist. LEXIS 801, at *2-3 (S.D.N.Y. Jan. 30, 1998)

(noting expedited discovery was ordered after the plaintiff demonstrated that the defendant had

copied plaintiff's client lists and made competing bids to plaintiff's clients); *see also IKON

Office Solutions*, 2003 WL 251954, at *3 (granting the plaintiff expedited discovery prior to

injunction hearing where plaintiff had some evidence of former employee's misappropriation of confidential information and solicitation of plaintiff's customers on new employer's behalf).

The injury MLA will suffer absent expedited discovery will be far greater than any inconvenience Defendants will experience if it is granted, particularly as such discovery will undoubtedly occur in arbitration. Defendants have been using MLA's confidential information to damage its business relationships and divert its business opportunities. The extent to which Defendants have continued to engage in their misconduct is not yet fully known and requires immediate discovery from them as they are the most direct sources from which to obtain it. MLA accordingly seeks an order requiring (1) Defendants' production of documents relevant to its claims within ten days of service of its requests, and (2) depositions of Mahn, Pecorari and Kagan within fifteen days thereafter.

## IV.    CONCLUSION

For all the foregoing reasons, MLA respectfully requests that the Court deny Mahn's motion to dismiss and/or stay MLA's claims and grant MLA's cross-motion for expedited discovery.

Respectfully submitted,

Date:   July 30, 2010
       New York, New York

LITTLER MENDELSON, P.C.


/s/ David S. Warner
David S. Warner
Elias J. Kahn
900 Third Avenue
New York, NY  10022
Telephone:  (212) 583-9600
dwarner@littler.com
ekahn@littler.com

Paul J. Kennedy, *pro hac vice*
1150 17th Street, N.W., Suite 900
Washington, D.C.  20036
Telephone:  (202) 842-3400
pkennedy@littler.com

*Attorneys for Plaintiff*