UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MAJOR, LINDSEY & AFRICA, LLC,

             Plaintiff,

        - against -

SHARON MAHN, CARLO PECORARI,
PARKER LELAND, INC., JOSHUA KAGAN,
and KAGAN CONSULTANTS INC.,

             Defendants.

**DECLARATION OF ROBERT J. ANELLO IN FURTHER SUPPORT OF SHARON MAHN'S MOTION TO DISMISS AND/OR STAY PLAINTIFF'S CLAIMS AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR EXPEDITED DISCOVERY**

10 Civ. 4239 (CM)

ECF Case

------------------------------------------------------------ X

    ROBERT J. ANELLO, declares and affirms under penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

    1.    I am an attorney admitted to practice before the courts of the State of New York, the United States District Court for the Southern District of New York and the Second Circuit Court of Appeals, and a principal of the law firm of Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C. ("MAGIAB"), attorneys for defendant Sharon Mahn in this matter. I submit this declaration, together with the accompanying Memorandum of Law, in further support of Sharon Mahn's Motion to Dismiss and/or Stay Plaintiff's Claims and in opposition to plaintiff's Cross-Motion for Expedited Discovery, and to set forth evidence that the Court may consider in ruling on both motions.

I. Ms. Mahn Voluntarily Produced 15,000 Pages of E-mail Many Months Ago

2.     On information and belief, plaintiff, Major, Lindsey & Africa, LLC ("MLA"), terminated Ms. Mahn's employment on or about November 18, 2009. That same day, plaintiff's counsel sent to Ms. Mahn a "cease and desist" letter. A true and correct copy of that letter is attached hereto as Exhibit A. Shortly thereafter, Ms. Mahn retained James Batson, of the firm Liddle & Robinson, LLP as counsel.

3.     On information and belief, on November 20, 2009, Ms. Mahn and plaintiff entered into an agreement under which Ms. Mahn permitted plaintiff's forensic expert to take images of the hard drive of Ms. Mahn's personal computer and Ms. Mahn agreed to provide personal emails to MLA. By November 24, 2009, Mr. Batson had already produced approximately 1100 pages of e-mails from Ms. Mahn's personal e-mail account to plaintiff's counsel. A true and correct copy of a letter, sent by Mr. Batson to plaintiff's counsel and dated November 24, 2009, enclosing a production of e-mails bearing control numbers SM00001-SM01182 is attached hereto as Exhibit B. By December 21, 2009, Mr. Batson had produced nearly 5,000 pages of e-mails in total from Ms. Mahn's personal e-mail account to plaintiff's counsel. A true and correct copy of a letter, sent by Mr. Batson to plaintiff's counsel and dated December 21, 2009, enclosing a production of e-mails bearing control numbers SM04363-SM04781 is attached hereto as Exhibit C. By January 20, 2010, plaintiff's counsel had received nearly 10,000 pages of e-mails in total from Ms. Mahn's personal e-mail account. A true and correct copy of a letter, sent by Mr. Batson to plaintiff's counsel and dated January 20, 2010, enclosing a production of e-mails bearing control numbers SM07821-SM09670 is attached hereto as Exhibit D. By February 16, 2010, plaintiff's counsel was in possession of almost 15,000 pages of e-

mails from Ms. Mahn's personal e-mail account, nearly the entire volume of e-mails produced. A true and correct copy of a letter, sent by Mr. Batson to plaintiff's counsel and dated February 16, 2010, enclosing a production of e-mails bearing control numbers SM13243-SM14728 is attached hereto as Exhibit E.

### II. Ms. Mahn Retains MAGIAB After Plaintiff Files its Complaint

4. Plaintiff filed its complaint under seal on May 26, 2010.

5. On or around June 10, 2010, Ms. Mahn retained MAGIAB to represent her in this matter.

### III. At Ms. Mahn's Initiation, Ms. Mahn and MLA Briefly Discuss Settlement

6. Around June 15, 2010, I first spoke with counsel for MLA about exploring the possibility of arbitrating MLA's claims for monetary relief against all of the defendants. Because plaintiff has put at issue these purported settlement discussions to negate Ms. Mahn's contention of its undue delay in seeking injunctive relief, I describe those discussions to rebut plaintiff's contention.

7. We scheduled a meeting for June 22, 2010, which was postponed until June 29, 2010 because of a scheduling conflict.

8. During the June 29 meeting, I proposed, on behalf of all defendants, that if MLA agreed to arbitrate its claims against all defendants, the defendants would consent to entry of a preliminary injunction, on the terms laid out in plaintiff's complaint.

9. During this meeting there was no discussion of any substantive resolution of MLA's claims against Ms. Mahn. Although I asked for a demand from plaintiff's counsel, plaintiff's counsel refused to make one and the meeting terminated abruptly.

10. Two days later, on July 1, 2010, on behalf of all defendants, I sent a letter to plaintiff's counsel setting forth defendants' proposal offering to enter into an injunction in exchange for arbitration of all claims.  A true and correct copy of that letter is attached as Exhibit F.

11. Five days later, on July 6, 2010, plaintiff's counsel sent a letter to myself and counsel for the other defendants stating that plaintiff would agree to arbitrate its claim for monetary relief against all defendants, in exchange for a preliminary injunction and its attorneys' fees incurred in this litigation.  Attached as Exhibit G is a true and correct copy of that letter.

12. Two days later, my colleague, Judith Mogul called plaintiff's counsel to ask him to specify how much in fees plaintiff was seeking, so that defendants could respond to plaintiff's proposal.

13. Plaintiff's counsel never returned Ms. Mogul's phone call.

14. That same day, Ms. Mogul sent an e-mail to plaintiff's counsel, reiterating her request for information about the fees plaintiff sought.  Attached as Exhibit H is a true and correct copy of that e-mail.

15. Ms. Mogul never received a response to that e-mail.

16. Instead, on July 12, plaintiff's counsel sent an e-mail to myself and counsel for Ms. Mahn's co-defendants stating that plaintiff had decided to "rescind" the counter-proposal set forth in the July 6 letter.  Attached as Exhibit I is a true and correct copy of that e-mail.

17. Plaintiffs never engaged in any good faith discussions concerning settlement of this matter. As evidence of such, they refused to consent to any extension whatsoever of Ms. Mahn's time to answer or move against the complaint

18. Besides these altogether one-sided settlement discussions, which consisted of a single meeting and an email exchange over the course of a ten-day period, and which began months after Ms. Mahn's production of documents, I am not aware of any other discussions that could be characterized as "settlement discussions" between Ms. Mahn and any lawyer acting on her behalf in this matter.

Dated: New York, New York
August 9, 2010

                                        MORVILLO, ABRAMOWITZ, GRAND,
                                        IASON, ANELLO & BOHRER, P.C.

                                        By: /s Robert J. Anello
                                            Robert J. Anello
                                          *Attorneys for Sharon Mahn*
                                          565 Fifth Avenue
                                          New York, NY 10017
                                          Tel: (212) 856-9600
                                          Fax: (212) 856-9494
                                          ranello@maglaw.com