UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/7/10
```

------------------------------------------------x

MAJOR, LINDSEY & AFRICA, LLC,

      Plaintiff,

  -against-                              10 Civ. 4239 (CM)

SHARON MAHN, CARLO PECORARI,
PARKER LELAND, INC., JOSHUA KAGAN,
and KAGAN CONSULTANTS INC.,

      Defendants.

------------------------------------------------x

## DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND/OR STAY, DISMISSING THE CFAA CLAIM AND DENYING PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

McMahon, J.:

Plaintiff Major, Lindsey & Africa, LLC ("MLA") is a leading legal search firm, engaged in the placement of attorneys in jobs. Defendant Sharon Mahn was employed as a Managing Director of MLA. Pursuant to her employment contract she was required not to divulge information about MLA's clients—attorneys who are seeking to be placed in jobs—to third parties, or to use that information for her own purposes. MLA alleges that Mahn did precisely that: plaintiff asserts that Mahn provided information to two of its competitor agencies, defendants Parker Leland, Inc., and Kagan Consultants Inc., via their principals, defendants Carlo Pecorari and Joshua Kagan.

In its complaint, MLA seeks relief for violation of certain common law duties to MLA. Its hook for federal jurisdiction is Mahn's alleged violation of the Computer Fraud and Abuse Act ("CFAA"), a federal law that makes it unlawful for any person to access a protected computer "without authorization" or beyond "authorized access." See 18 U.S.C. § 1030. MLA

seeks relief against the other four defendants for unfair competition and for aiding and abetting Mahn's breach of fiduciary duty, as well as purported violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"). The complaint seeks both monetary and injunctive relief.

Pursuant to Mahn's employment agreement, all of MLA's claims for monetary damages are subject to arbitration. The employment agreement carves out from the blanket arbitration clause any "[c]laims . . . by the Company . . . seeking injunctive . . . relief with respect to any confidentiality, return of property, non-solicitation, non-compete, or nondisparagement covenants I have with the Company . . . ." (Mogul Ex. A.) MLA brings this action against Mahn in reliance on this carve-out provision; the other defendants have not agreed to arbitrate any claims, and so are subject to suit for money damages in some court.

Mahn has moved to dismiss and/or stay MLA's claims against her, and more particularly to dismiss on the merits MLA's lone federal claim against her, the claim for injunctive relief under the CFAA. She contends that this action is simply MLA's effort to upend her right to arbitration, and that the arbitration now pending between her and her former employer should proceed. In the event the Court were to conclude that claims here asserted against her were properly litigated rather than arbitrated, Mahn urges that the Court issue a stay so that the arbitration can proceed first.

Mahn's motion to dismiss the claims asserted in this Court in favor of arbitration is denied. Her motion to dismiss her CFAA claim is granted.

Plaintiff has cross-moved for expedited discovery. The motion is denied. Mahn left the employ of MLA in November 2009. This action was not commenced until six months after Mahn was fired, on May 26, 2010. The filing of the complaint was not accompanied by any

2

motion for preliminary injunctive relief.  MLA has thus far litigated its case without ever

suggesting that there was any urgency to its claims for injunctive relief.  That being so, the Court

cannot fathom why it should direct discovery to be conducted otherwise than in the ordinary

course.

Furthermore, it is the practice of this Court to stay all discovery of any sort in any case

involving allegations of RICO violations until (1) a RICO case statement is filed, and (2) the

Court has an opportunity to consider any motion to dismiss that may be addressed to the RICO

claims.  This Court believes that until the "thermonuclear" allegations of racketeering are

addressed as a pleading matter (assuming the defendants wish to contest them as a pleading

matter), no other claims should proceed.  Therefore, not only will there not be any expedited

discovery, there will be no discovery whatsoever, until MLA's racketeering allegations—which

is the only basis for asserting federal jurisdiction over the defendants other than Mahn—are

preliminarily addressed.  The Court was (and still is) planning to address these matters at the

Initial Pretrial Conference, which happens to be scheduled for three days from now.

## FACTS

Ms. Mahn was a Managing Director in MLA's Partner Practice Group.  Her employment

was governed by an employment agreement, dated October 19, 2005 ("Employment

Agreement").

The Employment Agreement contains quite predictable clauses concerning Mahn's use of

what MLA describes as "Confidential Information" and "Trade Secrets" concerning its

business—which is, essentially, the business of being a specialized employment agency for

attorneys.  Mahn agreed that the identity of and information about both MLA "clients" (law

firms and other legal employers) and "candidates" (lawyers who were seeking new legal

employment) qualified as MLA's confidential information.  This information included obviously confidential material from the perspective of the clients and candidates, including law firm financial information and data about the portability of certain legal business and persons' billing rates.  Also deemed confidential was information Mahn obtained about MLA that was "not otherwise available in the public domain, including but not limited to, MLA's strategy or plans, financial information, fee structures and commission information."  (Compl. Ex. 1.)

At the end of her employment, Mahn was obligated to return all computers and equipment, all copies of all documents (including copies of emails), and all other confidential information to MLA, and to keep any information that was in her memory to herself for a period of eighteen months after her employment ended.

Mahn's agreement provides that her services are of a special character, such that MLA cannot be compensated adequately in damages for any breach of covenant by her (including, obviously, any breach of her covenant not to disclose MLA's Confidential Information), and that MLA was entitled to injunctive relief to prevent or curtail any such breach or threatened breach of covenant.

The Employment Agreement specifically incorporated a broad arbitration clause, albeit one with a significant carve-out:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, Members, employees, or agents in their capacity as such. The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include but are not limited to, claims for wages or other compensation due; claims for breach of contract or covenant (express or implied); tort claims, claims for discrimination or harassment . . . ; claims for benefits

4

(except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or (2) is underwritten by a commercial insurer which decides claims); and claims for violation of any federal state or other government law, statue [sic], regulation, or ordinance, except claims excluded elsewhere in this Agreement.

Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the EEOC or similar state or local fair employment practices agency, or an administrative charge within the jurisdiction of the National Labor Relations Board), in any way related to any claim covered by this Agreement.

(Mogul Ex. A.)

The carve-out referred to above states as follows:

**Claims Not Covered by the Agreement**

**Claims by me for workers' compensation or unemployment compensation benefits are not covered by this Agreement. Claims, either by the Company or by me, seeking injunctive or declaratory relief with respect to any confidentiality, return of property, non-solicitation, non-compete, or nondisparagement covenants that I have with the Company or any other intellectual property rights are not covered by this Agreement (although all other aspects of such claims, including any claims for damages, are covered by this Agreement).**

(Id.) The paragraph quoted above appears in boldface in the Mutual Agreement to Arbitrate.

MLA fired Mahn on November 18, 2009, allegedly because it had discovered emails in which Mahn disclosed MLA proprietary information to one of her co-defendants in this case, Joshua Kagan, who is a principal at an MLA competitor firm. Two days later, Mahn permitted MLA's forensic expert to take images off the hard drive of her personal computer; she also agreed to provide personal emails to MLA. By November 24, 2009, approximately 1,100 pages of Mahn's emails were provided to MLA's counsel; a month later, December 21, 2009,

5

plaintiff's counsel had received nearly 5,000 pages of emails. By January 20, 2010, plaintiff's counsel had received nearly 10,000 pages of emails from plaintiff's personal e-mail account. By February 15, 2010, plaintiff's counsel was in possession of almost 15,000 pages of Mahn's personal emails. (Anello Exs. B-E.)

The complaint in this action was filed over three months after the delivery of this last batch of emails, on May 26, 2010. The complaint quoted from numerous emails purporting to show that Mahn had disclosed proprietary information she learned during her employ at MLA to Kagan; the emails indicated a certain amount of hostility toward Mahn's then-employer. Nonetheless, MLA did not accompany the complaint with a motion for a preliminary injunction. Instead, it engaged in a single meeting, on June 29, 2010, with Mahn's newly-retained counsel. There was a subsequent exchange of correspondence, but by July 12, 2010, any "settlement discussions" were concluded.

The next day, on July 13, 2010, Mahn made her motion to dismiss or stay this action. MLA opposed that motion and cross-moved for expedited discovery on July 30, 2010. As of today, September 7, 2010, MLA has not moved for a preliminary injunction.

## DISCUSSION

### I.  The Motion to Dismiss or Stay this Action in Favor of Arbitration Is Denied

Mahn seeks to dismiss or stay this action in favor of an arbitration that will cover substantially the same ground, only seeking monetary damages. That motion is denied.

The Mutual Agreement to Arbitrate ("Arbitration Agreement") controls the disposition of this motion. It specifically exempts claims for injunctive relief relating to the issue of "confidentiality," including all intellectual property rights (which the Court understands to be copyrights and trademarks) and the return of property, as well as non-solicitation of MLA clients

6

and customers and non-competition agreements.  The claims asserted in the lawsuit concern

Mahn's obligation to keep certain information confidential and not to use it in competition with

her former employer.  The complaint seeks injunctive relief.  This action thus falls entirely and

explicitly within the terms of the carve-out to the arbitration clause.

It is true that the claims in this case are substantially duplicative of various claims for

money damages that are subject to arbitration, but the Arbitration Agreement specifically

contemplates that damages claims relating to the same subject matter will have to be arbitrated,

notwithstanding the obvious duplication of effort that would entail.  The parties' agreement to

this unusual procedure does not divest this Court of the ability to control its own docket.  The

Court declines to stay this lawsuit pending completion of the arbitration.

Nor does the parties' agreement concerning arbitration discovery preempt the Federal

Rules of Civil Procedure with respect to discovery in connection with this lawsuit.  The fact that

discovery in this action may prove useful in connection with the arbitration, which is subject to

its own special discovery rules, is of no moment.

The plaintiff is reminded that the only relief available in this action is (1) an injunction,

and/or (2) a declaration pursuant to the Declaratory Judgment Act.  No other relief can or will be

awarded.  This includes, for example, an accounting, which is neither an injunction nor a

declaration.  Since the carve-out in the Arbitration Agreement refers explicitly to the remedies of

injunctive or declaratory relief, rather than to the broader category of "equitable" relief, any

claim for any form of equitable relief other than injunctive or declaratory relief will have to be

pursued in arbitration.  And of course not a dime in damages can be or will be awarded by this

Court against Mahn in connection with any claim.

7

## II.     The Motion to Dismiss the CFAA Claim Against Mahn Is Granted

MLA seeks injunctive relief against Mahn pursuant to a federal statute, the CFAA, which

prohibits access to a protected computer.  Mahn seeks dismissal of this claim, on the ground that

the CFAA does not cover the activity alleged in the complaint—the misuse of information

gathered from a computer to which Mahn had access as an MLA employee.

The CFAA provides a private right of action against any person who "knowingly and

with intent to defraud, accesses a protected computer without authorization, or exceeds

authorized access, and by means of such conduct furthers the intended fraud and obtains

anything of value . . . ."  18 U.S.C. §1030(a)(4).

There is a split of authority over whether the CFAA applies to the situation alleged in this

case—to the faithless employee's misuse of confidential information gleaned from a computer to

which the employee had authorized access as a result of her employment.

The First and Seventh Circuits—which, as far as this Court knows, are the only Courts of

Appeals to consider the matter—have concluded that the CFAA applies in circumstances

analogous to those at bar, because an employee's "authorization" to access her employer's

protected computer and the information contained therein is effectively terminated once the

employee acquires interests adverse to her employer or is "otherwise guilty of a serious breach of

loyalty to the principal."  Int'l Airport Ctrs. v. Citrin, 440 F.3d 418, 421 (7th Cir. 2006); EF

Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 582-84 (1st Cir. 2001).  One judge of this

district court has reached the same result.  Calyon v. Mizuho Sec. USA, Inc., No. 07 Civ. 2241,

2007 WL 2618658, at *1 (S.D.N.Y. July 24, 2007).  Put simply, these courts take the position

that a faithless employee—someone who accesses a computer for the purpose of stealing

8

information with the intention of using it for her own purposes rather than the employer's—accessed the computer without authorization or exceeded authorized access.

Other district courts, including judges of the Southern and Eastern Districts of New York, have reached the opposite result. See Orbit One Comm'ns, Inc. v. Numerex Corp., 692 F. Supp. 2d 373 (S.D.N.Y. 2010); Jet One Group v. Halcyon Jet Holdings, Inc., No. 08-CV-3980, 2009 WL 2524864, at *5-7 (E.D.N.Y. Aug. 14, 2009). In Orbit One, my colleague Judge Kaplan concluded that the literal language of the statute precluded the construction accepted by the courts mentioned in the previous paragraph. 692 F. Supp. 2d at 385. Observing that the statute does not expressly prohibit the misuse or misappropriation of information, he noted that the phrase "exceeds authorized access" is defined in the statute as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled to obtain or alter," and that the statute's definitions of "damage" and "loss" were consistent with a prohibition on "computer hacking, which compromises the integrity and availability of data and may cause an interruption of computer service." Id. at 385-86.

The Second Circuit has not directly spoken to this issue. However, as Judge Kaplan noted in Orbit One, the Second Circuit has held that a claimant may recover lost revenue pursuant to the CFAA only when the loss is "connected to an 'interruption in [computer] service.'" Nexan Wires S.A. v. Sark-USA, Inc., 166 F. App'x 559, 562 (2d Cir. 2006) (quoting Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 477 (S.D.N.Y. 2004)). While Nexan is an unreported opinion, it suggests that our Court of Appeals may well take a different view of the CFAA's applicability to the faithless employee situation than do its sister Circuits. And while Nexan did

not deal with the issue of injunctive relief, I think it unlikely that the Circuit would conclude that an injunction was more broadly available than damages are under the CFAA.

While the result reached by the First and Seventh Circuits is not implausible, I find Judge Kaplan's reasoning more persuasive—especially in view of the statute's legislative history, which reveals that Congress was endeavoring to outlaw computer hacking and electronic trespassing, not providing a new means of addressing the faithless employee situation. It contorts the statute to say that Mahn was not authorized to have access to her workplace computer; the more logical and far less strained reading of the situation pleaded is that she exceeded her authorized access by using the computer to further her own interests, in violation of her fiduciary duty to MLA.

I recognize that Judge Kaplan's ruling came on a motion for summary judgment, not a motion to dismiss, and he reached his result due to a failure of evidence, not because of any defect in pleading. However, there is no factual allegation in MLA's complaint that, if true, would suggest that Mahn hacked into a computer for the purpose of causing the types of damage and/or loss prohibited by the statute. There is only an allegation that Mahn accessed MLA's database in her capacity as an MLA employee (which she was authorized to do) and then misused the data she found there (which means that she exceeded authorized access). But she did not "exceed authorized access" in the manner prohibited by the CFAA, for the reasons explained by Judge Kaplan. Therefore, MLA's claim for injunctive relief against Mahn under the CFAA must be dismissed.[1]

---

[1] There may well be an impediment to MLA's obtaining an injunction (preliminary or permanent) under the CFAA at this point, some nine months after Mahn left its employ. No injunction can be issued when there is no possibility of a future violation. See Passlogix, Inc. v. 2FA Tech., LLC, No. 08 Civ. 10986, 2010 WL 2505628, at *7 (S.D.N.Y. June 21, 2010); Jay's Custom Stringing, Inc. v. Jonghwan Yu, No. 01 Civ. 1690, 2001 U.S. Dist. LEXIS 9298, at *23 (S.D.N.Y. July 5, 2001). I would imagine that MLA will have some difficulty proving that Mahn has any ability to access any protected computer owned by MLA. I note, however, that Mahn's counsel did not raise this argument, and it is not the basis of my decision.

Dismissal of this claim will work no prejudice to MLA. It can obtain all the injunctive relief it requires against any misappropriation or misuse of its data by a faithless former employee—assuming it can show ongoing misuse or a reasonable probability of a future violation of the Employment Agreement's confidentiality provisions—relying on its claims under state/common law.

**III.    The Motion for Expedited Discovery Is Denied**

The only other federal claim in this case is a racketeering claim asserted against defendants Mahn, Pecorari and Kagan.

This Court has ample experience with the assertion of bogus RICO claims for the purpose of (1) obtaining federal jurisdiction over an action that belongs in the state courts, and/or (2) extracting a coercive settlement due to the *in terrorem* nature of labeling someone as a racketeer. Therefore, it has become my unvarying practice—in every case, bar none, in which racketeering is alleged—to require the plaintiff to supplement its complaint with a RICO Case Statement and to stay all discovery in the case—*all* discovery, not just RICO-related discovery—until the defendants have had an opportunity to move to dismiss the RICO claims and the Court has decided the motion. Of course, if the defendants decline to make a motion to dismiss, discovery can proceed in the ordinary course. In my experience, that has never occurred.

It is particularly important to resolve any issues relating to the sufficiency of the RICO pleading because if that claim were dismissed, this Court would lack jurisdiction over this matter. I frankly have no interest in retaining a case in which it appears that federal charges have been trumped up in order to avoid litigating what are essentially state and common law claims in the New York State Supreme Court.

11

Therefore, there will be no discovery of any sort—expedited, regular track, or slow motion—until we have our initial pretrial conference on September 10, we set a schedule for the filing of the RICO Case Statement and any motions to dismiss, and the Court has an opportunity to consider the motion.

I do not disagree with defendants' argument that plaintiff's failure to sue Mahn until months after she was fired, as well as its failure to move for a preliminary injunction when it filed the lawsuit—or at any time up to and including today—makes it highly unlikely that the plaintiff will be able to obtain an injunction. But plaintiff is the master of its complaint, and because it chose to assert a RICO claim, it is constrained by the practices developed by this Court to expedite for the orderly control of its calendar.

## CONCLUSION

This constitutes the decision and order of the Court. The Clerk is directed to close out the motions at Docket Nos. 19 and 28, and to strike them from the Court's open motion list.

Dated: September 7, 2010

Colla M. Mol

U.S.D.J.

BY ECF TO ALL COUNSEL